### E. E. SAPP AND LOU SAPP v. THE STATE.

No. 4241. Decided November 15, 1916.

Rehearing denied December 20, 1916.

**1.—Murder—Evidence—Circumstantial Evidence—Motive—Conspiracy.** ·

Where, upon trial of murder, the conviction depended upon circumstantial evidence and conspiracy, there was no reversible error to admit in evidence all the circumstances and the acts and declarations of the parties, leading up to the homicide, showing motive. Following Belcher v. State, 71 Texas Crim. Rep., 653, and other cases.

**2.—Same—Limiting Testimony—Motive—Rule Stated.**

The rule is well established that it is neither necessary nor proper to limit testimony which goes to prove motive.

**3.—Same—Conspiracy—Declarations of Co-conspirators—Rule Stated.**

It is a well established rule that every one who enters a conspiracy to commit a crime, before the ultimate object and purpose of it is completed, is deemed a party to it from its inception, and that he adopts as his own all the preceding acts of the others, and that their declarations or statements made before he entered into it are admissible as against him as well as those who originally entered into it, even though what was said or done by any of the others was done in his absence.

**4.—Same—Evidence—Impeaching Witness—Reversible Error—Predicate.**

Upon trial of murder, where a witness for the defendants gave material testimony in favor of one of the defendants, to the effect that the relations between him and his wife (then deceased) were cordial and affectionate, it was reversible error, in the absence of a proper predicate, to admit testimony that the defendants' witness had made declarations to the contrary. Following Drake v. State, 29 Texas Crim. App., 265, and other cases.

**5.—Same—Evidence—Impeaching Witness—Opinion of Witness.**

Where, upon trial of murder, a witness for the defendants testified that persons answering the description of one of the defendants and one of defendants' co-conspirators did not travel on a certain train, testimony of a State's witness to the effect that said defendants' witness had told him, the State's witness that there was not any doubt that the defendants and their co-conspirators were guilty, was inadmissible, although said defendants' witness' statement that said co-conspirators got off of a certain train at a certain time, was admissible.

**6.—Same—Evidence—Impeaching Witnesses—Cross-examination.**

While it was admissible, on cross-examination of a State's witness, to ask her whether she was a common prostitute, which she denied, this concluded the inquiry, and it was error to admit testimony that her reputation was that of a common prostitute. Following Wilson v. State, 71 Texas Crim. Rep., 426, and other cases.

**7.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of murder, defendants were indicted only for the murder of one of the original conspirators in the murder of one of the defendants' wife and there was testimony in the case showing the original homicide of said de fendant's wife, and also that of said defendant's co-conspirator later on, to show said defendant's connection with both homicides, the court should have omitted his charge limiting the testimony to the killing of said defendant's' co-conspira tor to the effect that the jury could not find defendants guilty of the other homicide, as the jury could not have been misled.

**8.—Same—Charge of Court—Motive.**

Upon trial of murder, where defendants were charged with the murder of one of the co-conspirators in the prior murder of one of the defendants' wife, and there was testimony in the case as to the relationship of this defendant and his wife, to show motive, the court should not have submitted a charge thereon.

**9.—Same—Moral Turpitude—Evidence—Cross-examination—Rule Stated.**

Upon trial of murder, it was error to permit the State on cross-examination of one of the defendants to have him testify that he had before that killed a man in Louisiana for which he had not been indicted, and also requiring the other defendant to testify to shooting his brother-in-law for which he had not been indicted, after the meeting of several grand juries. Following Wright v. State, 63 Texas Crim. Rep., 429.

**10.—Same—Charge of Court—Principals.**

The court in charging upon the law of principals should only submit that part of the statute which is applicable to the evidence, and that part of the statute relating to principals which is inapplicable should not be quoted in the charge, although this would not necessarily be reversible error.

**11.—Conspiracy—Original Opinion—Rehearing.**

Where, upon motion for rehearing to revise and reform the original opinion of this court in laying down the rule as to what constitutes a conspiracy, this court after reviewing its original opinion, finds no reason why it should revise and reform the same, there is no error.

**12.—Same—Conspiracy—Declarations of Co-conspirators—Rule Stated.**

It is not necessary that the declarations of co-conspirators be communicated to the other conspirators before it can be introduced in evidence, such dec-

larations are admissible in evidence against all parties to the conspiracy whether they heard of it or not, and all the circumstances showing motive by the defendants for the killing of deceased as well as the other homicides occurring prior thereto and connected therewith, are admissible in evidence and were questions of fact to be passed upon by the jury.

### 13.—Same—Case Stated—Sufficiency of the Evidence—Conspiracy.

Where, upon trial of murder, the theory of the State was that one of the defendants entered into a conspiracy with others to kill his wife, and that after her assassination he became suspicious of two of his co-conspirators who committed the murder of his wife, and thereupon entered into another conspiracy with his brother and others to kill said original co-conspirators, and said defendant and his brother were on trial for the murder of one of said original co-conspirators, and the jury was authorized from the evidence, although entirely circumstantial, to find this theory of the State true, although there was testimony to the contrary, the conviction is sustained under a proper charge of the court.

Appeal from the District Court of Angelina. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of murder; penalty, forty and twenty years, respectively, in the penitentiary.

The opinion states the case.

*F. J. & C. T. Duff, Mantooth & Collins, Denman & Thomas, I. D. Fairchilds, J. J. Collins,* and *Howeth & Adams,* for appellants.—On question that a narration of the facts that a conspiracy had been entered into and not in furtherance thereof is not admissible: Choice v. State, 52 Texas Crim. Rep., 285; Spencer v. State, 52 id., 289; Reagan v. State, 49 id., 443; Wallace v. State, 48 id., 318; Dungan v. State, 39 id., 115.

On question of declarations of co-conspirators in the absence of the defendant: Figaroa v. State, 58 Texas Crim. Rep., 611; Parnell v. State, 50 id., 419; Wallace v. State, 46 id., 341; Williams v. State, 55 id., 65; Hickey v. State, 62 id., 568; Draper v. State, 22 Texas Crim. App., 400; Cox v. State, 8 id., 254; Wilson v. State, 70 Texas Crim. Rep., 3.

On question of declarations of co-conspirators relating to crime already consummated and other and different crimes than the one for which defendants were prosecuted made in absence of the defendants and not communicated to them, not admissible to show motive: Walker v. State, 63 Texas Crim. Rep., 499; Anderson v. State, 63 id., 525; Kincaid v. State, 65 id., 464; Maclin v. State, 144 S. W. Rep., 951; DeLeon v. State, 155 id., 247.

On question of impeaching witness: Watson v. State, 52 Texas Crim. Rep., 85; Vann v. State, 45 id., 434; Kirk v. State, 48 id., 624; Burnam v. State, 61 id., 51; Davis v. State, 70 Texas Crim. Rep., 37; Rice v. State, 51 Texas Crim. Rep., 255.

On question of opinion of witness that defendants were guilty: Jennings v. State, 60 Texas Crim. Rep., 421; Richardson v. State, 49 Texas Crim. Rep., 391; Dowell v. State, 58 id., 482.

On question of witness being common prostitute: Pope v. State,

143 S. W. Rep., 611; Bird v. State, 66 Texas Crim. Rep., 611; Bogue v. State, 69 id., 656; Wilson v. State, 71 id., 426.

On question of hearsay evidence: Harris v. State, 1 Texas Crim. App., 74; Cervantes v. State, 52 Texas Crim. Rep., 82; Brown v. State, 74 Texas Crim. Rep., 356, 169 S. W. Rep., 437; Seymour v. State, 71 Texas Crim. Rep., 76; Williams v. State, 74 Texas Crim. Rep., 56; Reed v. State, 76 id., 335.

On question of other offenses: Betts v. State, 65 Texas Crim. Rep., 358, 144 S. W. Rep., 677.

On question of relations between one of the defendants and his wife: Collins v. State, 24 Texas Crim. App., 141; Jones v. State, 64 Texas Crim. Rep., 510.

On question of moral turpitude requiring _defendant to testify to remote homicide for which he had never been indicted: Galbraith v. State, 41 Texas, 567; Alford v. State, 52 Texas Crim. Rep., 621; Neumann v. State, 58 id., 248; Windham v. State, 59 id., 366; Lightfoot v. State, 106 S. W. Rep., 345; Bowman v. State, 70 Texas Crim. Rep., 22; Gray v. State, 77 Texas Crim. Rep., 221, 178 S. W. Rep., 237.

On question of charge of court on principals: Day v. State, 62 Texas Crim. Rep., 413; Black v. State, 65 id., 336, 145 S. W. Rep., 944; Cowley v. State, 72 Texas Crim. Rep., 173, 161 S. W. Rep., 471; Demeaner v. State, 58 Texas Crim. Rep., 624; Bird v. State, 48 id., 188.

*C. C. McDonald,* Assistant Attorney General, and *W. R. Blain,* for the State.—On question of conspiracy: Taylor v. State, 3 Texas Crim. App., 169; Stevens v. State, 42 Texas Crim. Rep., 154; Hudson v. State, 43 id., 420; Eggleston v. State, 59 id., 542; Snelling v. State, 57 id., 416; Smith v. State, 44 id., 53; Orner v. State, 78 Texas Crim. Rep., 415, 183 S. W. Rep., 1172.

PRENDERGAST, PRESIDING JUDGE.—Appellants were indicted and tried jointly for the murder of Dick Watts. They were found guilty, and their punishment assessed at forty and twenty years, respectively, in the penitentiary.

The record, statement of facts and briefs for both sides are very voluminous. There are apparently, however, but few questions necessary to be decided.

In view of the disposition we make of the case, we will not state at any length nor discuss the testimony.

The testimony was wholly circumstantial. The theory of the State substantially was that appellant E. E. Sapp originally entered into a conspiracy with others by which it was contemplated and intended that he should marry a rich old widow, he being a young man, manage to get possession of her property, and then make way with or kill her so as to get rid of her and ultimately to divide the property with the other conspirators. It also embraced the making way with or killing the witnesses to the murder of his wife. In fact, it embraced doing

any and everything that was necessary not only to kill the woman but prevent conviction therefor,—all to accomplish the end of getting her property and dividing it between the conspirators. That Lou Sapp entered the conspiracy with his brother, E. E., after the killing of E. E.'s wife, and included making way with by killing, the deceased Watts, who killed E. E.'s wife, and Havard, who was a companion of him at the time and knew all about it, thereby preventing the conviction of E. E. Sapp for murdering his wife, or having it done, and to succeed later in securing her property through a will she had executed in E. E. Sapp's favor and diving her property as stated. There was an abundance of proof introduced by the State circumstantially tending to prove the theory of the State.

Appellant has a very large number of bills ot exception; some to the introduction of testimony; others to the exclusion of it; and others to charges given and charges refused. Many of them raise the same or kindred questions.

It was established without controversy that the deceased, Dick Watts, killed the wife of E. E. Sapp by shooting her in the back. Appellants claimed this was accidental. The State's theory was that appellant E. E. Sapp hired Watts to kill her and that Havard knew all this and was a companion of Watts in this matter. The State introduced the testimony of several witnesses, who testified substantially to Watts' repeated declarations and also some by Havard, to the effect that E. E. Sapp had hired him to kill said Sapp's wife and was to subsequently pay him a considerable sum therefor. The circumstances would tend strongly to show that this was brought to the knowledge of E. E. Sapp, and that thereupon he induced his brother Lou to aid him, and that his brother did aid him, in corralling Watts and Havard, getting them drunk, or while drunk, enticed Watts, at least, away from Beaumont, where they all then were, taking him on the train and in an automobile into the big thicket in Hardin County, where they murdered and buried him, and his body was a few weeks thereafter found and identified. All this testimony objected to, as shown by appellants' bills, was clearly admissible against both appellants to show motive. It has always been held by this court that such testimony was admissible for that purpose. (White's Ann. C. C. P., secs. 1070, 1072 and 1074, subdiv. c. Judge White collates many cases under these sections. See also Belcher v. State, 71 Texas Crim. Rep., 646; Lane v. State, 73 Texas Crim. Rep., 266.)

It is also well established that it is neither necessary nor proper to limit testimony which goes to prove motive. (2 Branch's Ann. P. C., sec. 1885, p. 1047, where he collates some of the authorities.)

It is also well established that everyone who enters into a conspiracy to commit a crime before the ultimate object and purpose of it is completed is deemed a party to it from its inception and that he adopts as his own all the preceding acts of the others, and that their declarations or statements made before he entered into it are admissible as

against him, as well as those who originally entered into it, even though what was said or done by any of the others was done in his absence. The principles applicable to this question and the authorities of this State establishing them are so plainly and clearly laid down in 1 Branch's Ann. P. C., secs. 693-694, that we deem it unnecessary to elaborate them. We have recently in some cases restated and applied these principles.

Mrs. Corley was a witness for appellants and from their standpoint gave material testimony in their favor substantially to the effect, in contradiction of some of the State's testimony, that E. E. Sapp, soon after he married Mrs. Sapp, who was killed, was very attentive to her and she was very much attached to him and frequently stated to her and wrote her letters, all tending to show that the relations between E. E. Sapp and his said wife were cordial, affectionate and that she had confidence in him, etc. For the purpose of impeaching her, the court permitted several witnesses to testify in substance that at the time Mrs. Sapp was lying a corpse soon after she was killed, Mrs. Corley said: "Poor old thing, Sapp had you killed," and that she said, "It is a cold-blooded murder and Sapp ought to be arrested right now; that everybody knew Sapp married her for her money, and that was a poor way to get rid of her." Clearly all this testimony by these several witnesses was inadmissible and has uniformly been held so by this court since the rendition of the opinion in Drake v. State, 29 Texas Crim. App., 265. The State, if it could, would be permitted to impeach Mrs. Corley by proving that she made declarations prior to her testimony herein different from what she made along the same line at any other time prior thereto, whether at the time Mrs. Sapp was lying a corpse or not, but the proof by the witnesses objected to should have been excluded. It was wholly inadmissible under the line of authorities stated.

Another of appellants' bills shows that A. Hard, who was conductor on the Santa Fe train from Beaumont to Lumberton, testified in substance that persons answering the description of Lou Sapp and Dick Watts did not travel on his train from Beaumont to Lumberton on January 7th. The State, by its witness Jarvey, was permitted in impeachment of Hard to prove that Hard, at Cleveland in February or March, told him that "there was not any doubt that the Sapps were guilty," and that "there was not any doubt but that Lou Sapp and Dick Watts got off that train on January 7, 1915, at Lumberton and became passengers in an automobile driven by E. E. Sapp." The first part of Jarvey's testimony to the effect as just stated above that there was not any doubt but that the Sapps were guilty was also wholly inadmissible, and the court erred in admitting that part of Jarvey's testimony. The other part just above stated, we think, was admissible; that is, that Hard on this occasion said to him there was no doubt but that Lou Sapp and Dick Watts got off that train on January 7, 1915, at Lumberton, etc.

None of the testimony of the officers shown by appellants' bill of

exceptions No. 22 was admissible. The most that the State's witness Mary Keith could have been asked on cross-examination by appellants' attorneys was whether or not she was a common prostitute. This was asked her, and she denied she was. This concluded the inquiry into this subject, and none of the officers could testify that her reputation was that of a common prostitute; nor was any of the other testimony by these officers, as shown by this bill, admissible. (McCrary v. State, 38 Texas Crim. Rep., 609, and other authorities cited in Wilson v. State, 71 Texas Crim. Rep., 426.)

In appellants' bill No. 10 they complain of that paragraph of the court's charge to the effect that appellants were indicted for the murder of Watts and were on trial for that offense only, and they could not be convicted for the killing of Havard or Mrs. Sapp, but they could consider the evidence touching on the killing of these parties, Havard and Mrs. Sapp, for the purpose of enabling them to pass on the question of whether or not defendants, or either of them, killed Watts, and for no other purpose. Appellants' objection to this charge was that the court ought to have told the jury that they could consider the testimony of the killing of Havard and Mrs. Sapp only for the purpose of showing motive on the part of defendants to kill Watts. As shown above, it would be improper for the court to charge on any testimony which would tend to show motive for the crime charged in this case. The idea of the court in giving that charge seemed to be to prevent the jury from convicting the appellants for killing Dick Watts, because they had killed Havard or Mrs. Sapp. If appellants object to any such charge on another trial, the court should omit it. We can not see how the jury could be misled to convict appellants for the killing of Havard or Mrs. Sapp on a trial under an indictment charging them with the killing of Watts only. If it becomes necessary to caution the jury on another trial on this point, then such charge should be so worded as not to tell the jury directly that appellants killed either Havard or Mrs. Sapp, but that if the testimony so shows or tends to show.

Appellants objected to another charge of the court, which in substance was that they could consider for no other purpose than passing on the question of whether or not defendants, or either of them, killed Watts that testimony introduced with regard to the relationship of E. E. Sapp and his wife Ellen as to how they got along as man and wife after their marriage. This charge should be omitted on another trial.

It is always permissible for impeachment of an accused to show by him on cross-examination that he has been indicted or convicted of any felony, if not too remote, but it is not permissible to require an accused when testifying to show by him that he has committed any other offense, whether arrested on complaint therefor or not, if as a matter of fact sufficient time has elapsed thereafter to show that the grand jury has had an opportunity to investigate and act upon it and have

not found a bill of indictment. (Wright v. State, 63 Texas Crim. Rep., 429.) The court, therefore, committed an error in permitting the State to have Lou Sapp to testify on cross-examination to the effect that he had before that killed a man in Louisiana, for which, it seems, he had not been indicted; and also by requiring E. E. Sapp to testify to shooting his brother-in-law, for which he had not been indicted, as shown by appellants' bills Nos. 41 and 42.

Complaint is also made by appellants of the charge in that in defining who are principals, the court in substance quoted that part of the statute to the effect that one is a principal who not being actually present keeps watch so as to prevent the interruption of those engaged in the commission of the offense. And also those are principals who endeavor at the time of the commission of the offense to secure the safety or concealment of the defendants. It seems the court merely in substance quoted the statute in these respects and did not submit any issue of that kind to the jury for a finding. However, only that part of the statute applicable should be stated in the charge, and that part of it relating to principals which is inapplicable should not be quoted. This, we think, would not have presented reversible error. But for the very purpose of preventing objections to the charge, such matters which are inapplicable should not be included therein.

We have carefully considered all of appellants' assignments, but have deemed it unnecessary to take them up and discuss them separately. None of them present any reversible error, except as shown above. Some questions are assigned which doubtless will not arise on another trial. It is unnecessary to discuss them.

For the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION TO REVISE AND REFORM OPINION.

#### December 20, 1916.

PRENDERGAST, PRESIDING JUDGE.—Appellants have filed a motion asking the court to revise and reform its opinion herein. It is unnecessary to state the particulars thereof.

We think the appellants have misunderstood the opinion. In the first part of it we merely stated the *theory* of the State, so as to try to show the application of the questions determined and decided thereby—not that that *theory* is a fact. It may or may not be.

We think it can not be gathered from the opinion that we held that the deceased, Watts and Havard, were at first parties to the original conspiracy between E. E. Sapp and another at the time it was made, if it was. And certainly not that they were parties to any conspiracy to have themselves killed to prevent their testifying or otherwise as to their being hired to kill, and killing Mrs. E. E. Sapp. Nothing of the kind was meant or intended by the opinion. If they became

parties thereto, it was when E. E. Sapp hired them, if he did, to kill Mrs. Sapp. The killing of Watts and Havard, or either of them, if by appellants, was a later incident to and made necessary in order to carry out, under the theory of the State, the original conspiracy entered between E. E. Sapp and another or others, which was to the effect, as claimed by the State, that E. E. Sapp would marry a rich widow, manage to get her property by a will or otherwise, then make way with her by killing her, or otherwise, and divide the property acquired from her between the conspirators. Under the State's theory, the original conspiracy has never yet been ended or consummated. It can not, and will not, be until E. E. Sapp gets the balance of his wife's estate under her will and divides it with his conspirators. It would not be essential to make Watts and Havard parties to said claimed original conspiracy, that they should get any specific portion of Mrs. Sapp's property for killing her—the fact, if so, that they were hired by E. E. Sapp, and to be paid by him, to kill her, might be sufficient to make them parties thereto, to carry out one essential part—kill her.

Nor do we think it can be gathered from the opinion that we held that Lou Sapp was a party to said alleged original conspiracy before or at the time Mrs. Sapp was killed. His entry into the conspiracy, if he ever did, was at the time he assisted E. E. Sapp, if he did, in corralling Watts and Havard, taking them into the big thicket, and killing them, or helping E. E. Sapp to do so. The testimony might show that he did not know that Mrs. Sapp was to be or had been killed until some short time after she was killed, and perhaps prior to that time he did not even know that E. E. Sapp had married her. It may be that Lou Sapp was not to get any of Mrs. Sapp's property, nor any special pay, or specific amount, for what he did, if anything, in the killing of Watts or Havard. However, according to the theory of the State, he became a party to the conspiracy by entering into an arrangement with his brother, E. E. Sapp, and aiding and assisting him, if he did, to kill Watts or Havard, and thereby enable E. E. Sapp to consummate his original conspiracy and succeed in ultimately getting his wife's property and dividing it, and it was on this theory that the opinion was predicated.

We can not understand how the opinion of this court can ever get to a jury. It is intended for the guidance of the judge in the trial, and should be for his guidance, so far as the questions decided are concerned. As stated in the original opinion, we have not discussed nor commented on the evidence. We have merely stated the different theories, where applicable. Of course, we understand that appellants deny any and all conspiracies at any and all times, and they deny the killing of Mrs. Sapp other than as an accident, and they deny that they killed either Watts or Havard at any time or for any purpose, but the State contends otherwise, and it is the duty of this court, so far as it can, to decide the legal questions on the various contentions

of the different parties, and this, and only this, is what we have undertaken to do.

As we understand, it has never been held and is not necessary that an admission or declaration of a co-conspirator had to be communicated to the other conspirator against whom it is introduced before such admission or declaration would be admissible. The law is, as we understand it, that such declarations of a co-conspirator are admissible against all parties to the conspiracy, whether they heard it or it had been communicated to them or not.

The testimony of the various witnesses as to the declarations Watts and Havard made to them as they testified, which appellants objected to, shown by their bills, was held admissible on two grounds; one, particularly, to show motive by appellants for killing Watts; the other, as admissions or declarations as co-conspirators to that part of the conspiracy, if so, to the killing of Mrs. Sapp.

We refrain from discussing or even stating the testimony which would tend to show and authorize the jury to believe that both E. E. Sapp and Lou Sapp knew of the statements by Watts and Havard at different times that they or Watts had been hired by E. E. Sapp to kill Mrs. Sapp, etc. The many different times and places and circumstances where they are shown to have made such statements and the supervision and control of them by the Sapps about this time and shortly and immediately before Watts was killed, seems to form a chain of circumstances that would authorize a jury to find they did know and had notice of the declarations by Watts and Havard, notwithstanding appellants both denied any such knowledge or notice. All that was for the jury. It is unnecessary for us at this time to say whether or not all this evidence was of sufficient force to establish their knowledge or notice, as claimed by the State. The jury must pass upon that question.

The opinion might not have made it clear that the theory of the State was that E. E. Sapp hired not only Watts but Havard, too, to kill Mrs. Sapp, although the shot that killed her was fired by Watts alone. We take it that the contention of the State was that both of these parties were hired by Sapp to kill her, and both of them as to killing her would have been principals. However, we do not state that that is a fact. We merely state what we understand the contention of the State to be. Of course, appellants deny all of this, and a jury may believe their side ultimately, and not that of the State.

We have thought it proper to thus explain, because of appellants' motion. It is overruled.

*Overruled.*