## TOM HAYS v. THE STATE.

No. 6114. Decided October 26, 1921.

Rehearing denied November 30, 1921.

**1.—Murder—Conduct of Co-Defendant—Evidence—Conspiracy—Rule Stated.**

Upon trial of murder, where the defendant with others acted together, there was no error in admitting testimony as to conduct of one of the defendant's companions toward the deceased before leaving the dance, and towards a certain female in deceased's company at the first stop on the bridge, after they had left the dance, under the well known rule that what is done and said by any of the co-conspirators pending the conspiracy and in furtherance of the common design is admissible against the defendant, although said and done in his absence.

**2.—Same—Evidence—Res Gestae—Continuous Transaction—Other Offense.**

Where, upon trial of murder, it appeared that defendant attempted to make the female companion of deceased take a drink of whisky, etc., the same was admissible under the State's theory of conspiracy, as a part of the *res gestae* of a continuous transaction, and this although this testimony may have shown the commission of another offense.

**3.—Same—Evidence—Character of Witness—Reputation for Chastity.**

Upon trial of murder there was no error in sustaining the objection by the State to a question by the defense to the State's witness if she had not had improper sexual relations with men, as this was not permissible; and besides, specific acts of an immoral character with other parties cannot be shown affecting the credibility of a female witness. Following Bigliben v. State, 68 Texas Crim. Rep., 530, and other cases.

**4.—Same—Evidence—Explanation of Defendant's Conduct.**

Where the record on appeal disclosed that appellant was permitted to testify that he had no intent to insult the female companion of deceased, etc., but the evidence showed that defendant's acts against said female were intended to provoke the deceased into a difficulty, there was no error in the exclusion of defendant's offered testimony that he could show said female's reputation for want of chastity, etc.

5.—Same—Evidence—Predicate—Dying Declarations.

Where the record on appeal showed that a due predicate was laid for the introduction of dying declarations, there was no merit in defendant's declaration that said predicate was insufficient.

6—Same—Charge of Court—Principals.

Where the court's charge on principals amply protected the defendant's rights upon trial for murder, there was no reversible error.

7.—Same—Requested Charge—Additional Wounds.

An accused cannot speculate as to how long his victim may live who has already had a mortal wound inflicted upon him by another; when he inflicts additional wounds that hasten his death, and there was no error in refusing a requested charge on this phase of the case. Following Powell v. State, 13 Texas Crim. App., 244, and other cases.

8.—Same—Requested Charge—Provoking the Difficulty.

Upon trial of murder, there was no error in refusing a requested charge which proceeded upon the theory that if defendant provoked the difficulty with the deceased with no intent to inflict death or serious bodily injury upon him, but that two other companions did so, the defendant cannot be guilty of any grade of homicide, etc., but the record showed a continuous transaction and a conspiracy, there was no error.

9.—Same—Charge of Court—Manslaughter—Practice on Appeal.

Where defendant's charge on manslaughter disclosed the fact that it failed to take into account the element of provoking the difficulty with deceased, and was not a correct proposition of law under the facts of the instant case, there was no error in refusing it.

10.—Same—Self-Defense—Charge of Court—Requested Charge—Abandoning
   Difficulty.

Where the defendant's requested charge on self-defense was not a proper application of the law in the instant case, because it ignored defendant's acts in provoking the difficulty, and besides there was no evidence of abandoning the difficulty, but the same was a continuous transaction from beginning to end, there was no reversible error.

11.—Same—Charge of Court—Principals—Conspiracy—Provoking Difficulty.

Where, upon trial of murder, the evidence raised the issues of the law of principals, conspiracy and of provoking the difficulty, the court correctly submitted charges thereon.

12.—Same—Continuance—Want of Diligence—Testimony Not Probably True.

Where it appeared from record on appeal that the alleged absent witness would not likely have testified to the facts claimed in the application for continuance, or if so, that it would not probably have been true, and besides the application showed a want of diligence, there was no error in overruling same.

13.—Same—Self-Defense—Charge of Court—Rehearing—Conspiracy.

Where appellant insisted in his motion for rehearing that his exception to the charge of the court for his failure to submit, the theory of self-defense as against a knife attack on the part of the deceased, but it appeared from the record that the court below gave a more favorable charge on defendant's right of defense against an attack by the deceased with the pistol than defendant was entitled to (the facts showing a conspiracy) there was no reversible error.

**14.—Same—Contradicting Witness—Reputation for Chastity.**

Upon trial of murder, disclosing a conspiracy, anything which elucidated the condition, feeling and disposition of defendant, and those acting with him, toward deceased and his companions was admissible in evidence, and it was no defense or justification to attack the State's witness for unchastity, and the court correctly excluded same.

Appeal from the District Court of Cass. Tried below before the Honorable H. F. O'Neal.

Appeal from a conviction of murder; penalty, forty years imprisonment in the penitentiary.

*Sid Crumpton* and *Keeney & Dalby,* for appellant.—On question of court's charge on self-defense: Haymon v. State, 47 Texas Crim. Rep., 263; Wilson v. State, 46 id., 527.

On question of conduct of defendant towards State's witnesses: Jackson v. State, 55 Texas Crim. Rep., 85; Pool v. State, 45 id., 348; Lewellan v. State, 33 id., 412.

On question of charge on self-defense: Swain v. State, 48 Texas Crim. Rep., 104; Clark v. State, 56 id., 259; Stanley v. State, 62 id., 306.

*C. M. Cureton,* Attorney General, for the State.—Cited cases in opinion.

HAWKINS,. JUDGE.—Appellant was convicted for the murder of Tom Smith, and his punishment assessed at confinement in the penitentiary for forty years.

Active participants with appellant were his brother, Simeon Hays, and Boy Barnes. They were also indicted, tried and convicted. The Simeon Hays case is now pending before this court on appeal. The Barnes case was appealed, and the opinion of affirmance will be found reported in 90 Texas Crim. Rep., 50, 232 S. W. Rep., 312. The killing occurred in Bowie County. Venue in this case, upon appellant's application, was changed to Cass County. The main facts developed upon this trial are identical with those set out in the opinion in the Barnes case, *supra,* but will be repeated in so far as it may be necessary to make intelligent the discussion of the bills of exceptions presented in this record.

It is disclosed that ill-feeling existed between the Hays boys and deceased; that appellant had made threats to kill him, and that Simeon Hays had cursed him. Deceased stated that he had taken the last cursing off the Hays boys he intended to submit to, and had borrowed a pistol shortly before the killing. It appears that in one of the transactions testified about, and which occurred only a few days before the killing, Simeon Hays had cursed deceased, and asserted that deceased was mad because one of the Hays boys had taken Hallie Tittle away

from deceased at a dance some time prior thereto. On the night of the homicide John Reeder and deceased had accompanied Edith and Hallie Tittle to a dance, going in Reeder's car. Reeder was a brother-in-law of the Hays boys, having married their sister; but she had died some two years before. The evidence of the State shows that appellant, Simeon Hays, and Boy Barnes, on the night of the homicide were in an automobile together, and that Simeon Hays made inquiry as to the whereabouts of Reeder and who was with him, and was informed in the presence of his companions that Reeder, deceased and the Tittle girls were together. Appellant and his companions left immediately going in the direction of the dance, to which Reeder and his party had already gone. The State proved that after the dance had broken up, Reeder, deceased, and the Tittle girls were in their car preparing to leave when Boy Barnes came to the car and cursed and abused deceased, telling him if he opened his mouth he would jerk him out of the automobile and "stomp" his brains out. Deceased seems not to have resented this, but told Barnes they were good friends, and that he (deceased) did not want to have any trouble with him. The Hays' car was only ten or fifteen feet away when this happened. This was the beginning of conduct on the part of appellant and his companions towards deceased and the other occupants of his car which continued until the wounds were inflicted from which death resulted. Barnes got in the Hays' car, and Reeder with his companions drove away first. The Hays car passed them, and within a short distance, and in a few minutes was stopped on a bridge, making it impossible for the Reeder car to pass. When it came up and stopped appellant and his companions went back to the Reeder car. Appellant at this time offered Edith Tittle some whisky, and undertook to force her to drink. During this stop Barnes came to the side of the car where Hallie Tittle was, grabbed her by the leg and arm, pulled her clothes up around her waist, cursed her, and said he was going to take her out and have intercourse with her there in the road. When Edith Tittle observed Barnes' conduct towards her sister she appealed to Reeder to make him desist, and Reeder told him that would never do, that Hallie was only a fifteen-year old girl. Whereupon Barnes cursed Reeder, and told him to shoot, and that he (Barnes) could shoot the sights off a cannon. Smith, the deceased, did not resent this conduct towards Hallie Tittle, although he was her escort. It appears from the testimony of Edith Tittle that when Barnes was trying to pull Hallie out of the car he told deceased not to "open his head," and that after Barnes had turned her sister loose, appellant and Simeon Hays came to the car and said "you all will never go to another dance," and that appellant said he "would shoot in between the men dancing."

After this occurrence appellant and his companions proceeded a short distance further on the road when they again halted. When the Reeder car came up and started around them they told Reeder to stop, Barnes jumping on the running board and again demanding, with an oath,

that the car be stopped; as soon as the car came to a stand still, appellant, according to the State's testimony, came up on the side of the car where deceased was sitting, and said, "John, this is the s-n-of-a-b—h I have been telling you about, I want him," at the same time striking deceased. Deceased fired two shot at appellant, one striking him. Deceased then jumped out of the car and ran, being pursued, according to the testimony of the Tittle girls, by appellant, Simeon Hays and Barnes, who were shooting at him. After deceased fell they kicked him in the face, and one of the three flashed a light on him, and said saying "The s-n-of-a-b—h is not dead yet, shoot him again," whereupon Reeder here interposed and Simeon Hays, at Reeder's request, aided him·in carrying deceased and placing him in the back of the Reeder car. Simeon ·Hays then struck him over the head with a flash light, saying "The s-n-of-a-b—h is not dead yet, shoot him again," whereupon one of the three fired a shot through the back of the car. Reeder ,got his engine started, but Barnes turned off the switch, saying "they wanted to finish him" (referring to deceased). Reeder jumped out of the car, joined the young ladies, who had already started away on foot, and all three left the place. After they had gone Barnes and· appellant, according to Smith's dying declaration, both cut him. He is shown to have had nineteen knife wounds about his breast, throat and head.

Appellant objected to proof of Barnes' conduct towards deceased before leaving the dance, and towards Hallie Tittle at the first stop on the bridge, because it was a transaction between Barnes and other parties out of the presence of appellant, and because there was no evidence showing a conspiracy between Barnes and appellant to do deceased any injury. This question is presented in various ways by bills Nos: 2, 3, 5, 7, 8, 10, 11, 12, 13, 16, 17, 18 and 19. So much of the evidence has been set out in order that Barnes' conduct may be viewed in the light of the record as it developed during the transaction.

The mere statement of the foregoing evidence would appear to render unnecessary any extended discussion of the legal question raised. The well known rule that "what is said and done by any of the conspirators, pending the conspiracy, and in furtherance of the common design, is admissible against the one on trial, although said and done in his absence," is recognized by appellant, but its application to the instant case is questioned. The record discloses no personal ill-will on Barnes' part towards deceased. No previous trouble between them is shown, and Barnes' conduct can be accounted for in no other way than that a conspiracy against Smith existed between him and the Hays boys, and that his acts towards deceased, as well as toward Hallie Tittle were purposed to bring about some overt act on deceased's part, to be followed by concerted action against him. Guarding the rights of appellant on this issue we find in paragraph twenty-two of the court's charge this language:

"22. You are further instructed that before the acts and declarations of Boy Barnes and Simeon Hays can be used in evidence, it must

be shown, and you must believe from the evidence beyond a reasonable doubt that a conspiracy existed between the defendant, Tom Hays, Boy Barnes and Simeon Hays, to commit the very act described in the indictment; and if there is a reasonable doubt as to the existence of such conspiracy, if any, the acts and declarations of said Boy Barnes and Simeon Hays cannot be considered by you for any purpose."

What has been said also disposes of appellant's complaint at the court's refusal to give his first special requested charge.

While the cars were stopped at the bridge appellant attempted to make Edith Tittle take a drink of whisky; he caught her around the neck, and threatened to pour it all over her (or as one witness put it "to drench" her), if she did not drink. Appellant objected to this testimony as shown by bills numbers 4 and 9, because said acts and conduct was a transaction not between deceased and appellant, and only tended to show that appellant had violated another law, and threw no light on the issue involved in this case. There exists no doubt in our mind as to the admissibility of this evidence. As we view the record the acts and conduct of all three of the accused parties towards any of the occupants of the Reeder car could be shown under the State's theory of conspiracy, as being calculated to provoke deceased to resent such conduct. It was a part of the *res gestae* of a continuous transaction. That it may have shown the commission of other offenses would not render it inadmissible, if such acts were *res gestae* of the matter under investigation upon this trial. We discuss it no further, believing what was said in the first subdivision of our opinion in the Barnes case, *supra,* disposes of the assignment against appellant's contention.

Bill of exception 15 discloses that while Edith Tittle was testifying she was asked if on two occasions she had not had improper sexual relations with one Joe Black, staying out with him one night in the woods. Upon objection by the State she was not permitted to answer. The bill recites that she would have answered affirmatively, and that the evidence was offered to impeach the witness. Bill No. 24 recites that Joe Black was offered, and would have affirmed the truth of such relations with Edith Tittle on two occasions. Appellant offered this testimony to impeach the witness, and as explanatory of his conduct at the bridge when he offered said witness whisky, he claiming to have knowledge of such acts of sexual intercourse. Appellant offered a number of witnesses to prove the general reputation of Edith Tittle for virtue and chastity was bad, as shown by bills numbers 22, 23, 25, and 26, as affecting her credibility, and also as explanatory of his conduct towards her at the bridge. Appellant then offered (as shown by bill No. 27) to testify himself that he knew the general reputation of Edith Tittle for virtue and chastity was bad, that he had heard of acts of intercourse on her part with others, and had heard her use vulgar and obscene language. Objection on the part of the State was sustained. That specific acts of an immoral character with other parties cannot be shown as affecting the credibility of a female witness

has been announced many times by this court, and is not an open question. Bigliben v. State, 68 Texas Crim. Rep., 530; Scott v. State, 79 Texas Crim. Rep., 474, 185 S. W. Rep., 994; Sapp v. State, 80 Texas Crim. Rep., 363, 190 S. W. Rep., 489; Jennings v. State, 80 Texas Crim. Rep., 450, 190 S. W. Rep., 733; Flewellen v. State, 83 Texas Crim. Rep., 568, 204 S. W. Rep., 657; Branch's Ann. Pen. Code, Section 168. It is equally well settled that it is not permissible to impeach a witness for truth and veracity by showing that her reputation for chastity is not good. Many of the authorities just cited support the latter principle, and in addition, we note McCray v. State, 38 Texas Crim. Rep., 611, 44 S. W. Rep., 170; Hall v. State, 43 Texas Crim. Rep., 489, 66 S. W. Rep., 783; Ellis v. State, 56 Texas Crim. Rep., 15, 117 S. W. Rep., 987; Florence v. State, 61 Texas Crim. Rep., 238, 134 S. W. Rep., 689. But the appellant insists that he was entitled to have such evidence go before the jury as explanatory of his conduct towards Edith Tittle. The rule that a party has a right to testify as to his intent, or explain his actions, is borne out by the authorities presented by appellant, and is applicable in the cases cited which are Pratt v. State, 50 Texas Crim. Rep., 227; Money v. State, 97 S. W. Rep., 90; Lewallen v. State, 33 Texas Crim. Rep., 412; Berry v. State, 30 Texas Crim. Rep., 423; Kinnard v. State, 35 Texas Crim. Rep., 376; Mathews v. State, 42 S. W. Rep., 375; Turner v. State, 51 S. W. Rep., 366. An examination of these cases show that in each instance the accused was deprived of the right to explain his acts, or show his intent with reference to the party whom he was alleged to have assaulted, and for which he was on trial.

The record in the instant case disclosed that appellant was permitted to testify that he had no intent to insult Edith Tittle, or to apprehend that his conduct would have that effect. The issue was not his intent towards her. She was one of the young ladies in company with deceased, and the State had the right to develop appellant's conduct towards her, in connection with all the other facts, as bearing on the probable intent towards deceased in provoking him into a difficulty. The proof of the matters offered as affecting the chastity of Edith Tittle would have been violative of the rules of evidence before discussed, and we think was inadmissible. Such evidence might be permissible under some circumstances upon the trial for some offense, but we think the bills show no error in its exclusion in the instant case.

Bills numbers 20 and 21 raise the question of an insufficient predicate having been laid to admit the dying declarations of Tom Smith. This brings in review the facts produced upon this issue, and we deem it unnecessary to state them. We have examined the entire record and discover no failure to comply with any of the requirements preliminary to the use of such testimony.

Special charge No. 2 (bill of exceptions No. 29) requested by appellant raises practically the same question discussed by us in passing

on the motion for rehearing in the Barnes case. We find paragraph 13 of the Court's charge to be:

"I further charge you, that if you believe from the evidence beyond a reasonable doubt that either Boy Barnes or Simeon Hays, or both of them, unlawfully killed Tom Smith, and that the defendant was present at the time of such killing, still you will find the defendant not guilty, unless you believe from the evidence beyond a reasonable doubt that the defendant knew of the unlawful intent of the party or parties doing the killing, and aided such party or parties by acts, or encouraged them by words or gestures in the commission of the offense."

It occurs to us that the charge given amply protected appellant upon the point in question.

By special charge No. 3 appellant requested the court to charge, in effect, that, if Boy Barnes or Simeon Hays had inflicted upon deceased a gun-shot wound which would have produced death, and that, afterwards, in acting in self-defense, appellant cut or stabbed deceased with a knife "he would not be guilty of any offense whatever," unless the jury believed that he encouraged or aided the said Barnes and Simeon Hays in shooting deceased with a pistol, or unless the jury believed that appellant had agreed with said Barnes and Simeon Hays that they, or either of them, should kill deceased by shooting him. The refusal to give this charge is presented by bill of exceptions No. 30. The charge requested did not present a correct proposition of law, and therefore, the court properly refused it. An accused cannot speculate as to how long his victim may live who has already had a mortal wound inflicted upon him by another, when he inflicts additional wounds that hasten death. Powell v. State, 13 Texas Crim. App., 244; Gardner v. State, 44 Texas Crim. Rep., 572; Garner v. State, 45 Texas Crim. Rep., 310; Duque v. State, 56 Texas Crim. Rep., 214; Maddox v. State, 76 Texas Crim. Rep., 217, 173 S. W. Rep., 1026. The special charge entirely ignores the foregoing legal proposition. Again it makes appellant's guilt to depend upon whether he aided or encouraged his co-principals in "shooting" deceased, or had previously agreed with them to kill deceased by "shooting" him. We think it would be immaterial as to the manner in which death had been brought about if there had been a previous understanding to kill, or if appellant aided or encouraged his co-principals in the use of any means which produced death, or if having previously agreed to the killing he was present when it was done, however it may have been done.

Appellant requested the following special charge No. 4, which was refused by the court.

"Gentlemen of the Jury:

"You are further instructed as to the law of this case that if you believe from the testimony beyond a reasonable doubt, that Tom Hays provoked a difficulty with the deceased, Tom Smith, and if you further

believe from the testimony or have a reasonable doubt thereof that the said defendant did not intend to inflict death or commit serious bodily injury upon the deceased in such attack, if any, thereafter, if you find from the evidence beyond a reasonable doubt that Simeon Hays and Boy Barnes, both or either of them, entered the conflict and shot or cut and stabbed the deceased from which wounds inflicted either or all was calculated to produce death, and did produce death, the defendant would not be guilty of any grade of homicide whatever, and you will find him guilty of no higher offense than a simple assault and battery, unless in this connection, you should believe from the evidence beyond a reasonable doubt that the defendant agreed with Boy Barnes and Simeon Hays, either or both that they or either of them should shoot, cut or stab the deceased, or that at the time he encouraged by words or aided by acts, Simeon Hays and Boy Barnes, or either of them in shooting, cutting and stabbing deceased."

We do not believe the court committed error in refusing to give the foregoing requested charge. It seems to proceed upon the theory that if Tom Hays provoked the difficulty with the deceased with no intent to inflict death or serious bodily injury upon him, but that Simeon Hays and Barnes thereafter entered the conflict and inflicted the wounds from which death resulted that appellant would not be guilty of any grade of homicide, unless he had previously agreed with said Barnes and Simeon Hays that they should shoot or cut the deceased, or that he encouraged them at the time they were so inflicting the wounds. It entirely ignores any act that Tom Hays may have done subsequent to the provocation of the difficulty. The appellant himself denied having at any time fired a pistol at deceased, but does admit that after he had been shot and had been placed in Reeder's car that he (appellant) did cut deceased with a knife, but undertakes to justify himself for this act on the ground that at that time deceased was undertaking to cut him, appellant. Regarding the difficulty as a continuous transaction, as we believe we are warranted in doing from the evidence, it occurs to us that if Tom Hays provoked the difficulty with deceased with no intent to inflict death or serious bodily injury upon him, and that thereafter deceased, Smith, shot appellant, and made an assault upon him with a knife, and that appellant was reduced to the necessity of using his knife upon the deceased to protect himself, that appellant cannot claim that he was not guilty of some grade of homicide, but, under the law, would be guilty of manslaughter. This phase of the case was submitted to the jury, and the appellant's rights protected under paragraph 17 of the court's charge, in which the jury was instructed that under such circumstances the appellant would be guilty only of manslaughter.

Appellant requested the court to give the following special charge.

"You are further instructed on the laws of manslaughter that if you believe from the evidence, or have a reasonable doubt thereof, that the deceased shot the defendant with a pistol, thereby causing pain

and bloodshed and fear and anger, or either of them, and by reason of said pain, fear and anger the defendant's mind was rendered incapable of cool reflection, and thereafter while in such condition, if he cut or stabbed with a knife the deceased, Tom Smith, even though at the time you should believe from the evidence that Tom Smith was in a helpless condition and that the danger if any from the said Tom Smith upon the defendant had ceased, then if you so find the defendant would be guilty of no higher grade of offense than manslaughter."

An inspection of the foregoing requested charge discloses that it fails to take into account the element of provoking the difficulty with the deceased, and does not occur to us to be a correct proposition of law under the facts of the instant case. Authorities cited by appellant in his brief under his assignment are Branch's Crim. Law, Sections 463 and 464, and the cases cited thereunder. An examination of the sections referred to discloses that one is referring to imperfect self-defense, and the other directly to provoking the difficulty. Neither of these elements are included in the charge requested. If the deceased shot Tom Hays with a pistol, not having been provoked into it by acts of appellant, nor by those of his co-principals, and appellant killed deceased under these circumstances he would not be guilty of manslaughter, but would be justified under the law of self-defense. The trial court seems to have taken this view of the case, and paragraphs 18 and 19 correctly present this issue to the jury.

Special charge No. 6, which the court declined to give, in effect, told the jury that if appellant, Barnes and Simeon Hays agreed together that appellant should make an assault upon deceased, but not with any intent to kill him or inflict serious bodily injury upon him, and in pursuance of said agreement, appellant did assault deceased, and that thereafter appellant was put in danger of death or serious bodily injury at the hands of deceased, and that Barnes or Simeon Hays killed him, and that appellant encouraged them by words or aided them by acts he would be guilty of only manslaughter, providing he was not acting in self-defense at the time. The requested charge is subject to the vice heretofore pointed out with reference to another special charge requested by appellant; to-wit: it seems to proceed upon the theory that after acts were done by appellant for the purpose of provoking a difficulty with deceased, the actual killing was done by Barnes or Simeon Hays, whereas the facts admitted by appellant himself, as well as other evidence in the case, show that appellant was an active participant in cutting deceased after he had been placed in Reeder's car. There being such an omission from the charge as indicated, we do not believe the court committed error in the refusal to submit the same to the jury, and it is our opinion that appellant's rights, in so far as the issue of manslaughter was concerned, were sufficiently guarded by the court in his main charge to the jury, which has been heretofore adverted to.

Appellant excepted to the failure of the court to give his special charge No. 7, which is as follows:

"You are instructed on the law of self-defense that if you believe from the evidence, or have a reasonable doubt thereof, that the deceased made an attack upon the defendant with a pistol or knife which caused the defendant to have a reasonable expectation or fear of death or serious bodily harm, in such event the defendant would have a right to defend against such attack, and to shoot the deceased or cut the deceased as long as it reasonably appeared to the defendant that he was in danger of death or serious bodily injury from the deceased and in such event, it would make no difference at what time the fatal blow was inflicted, either by the use of a knife or a pistol, if it reasonably appeared to the defendant at the time that he inflicted the wound, if he did so do, that he was in danger of death or serious bodily harm.

"In this connection you are further charged that if after the first difficulty, if there was a difficulty, in which the defendant was shot by the deceased with a pistol, thereafter if you believe from the evidence or have a reasonable doubt that the deceased made an attack upon defendant with a knife or threatened to attack the defendant with a knife, and by such attack or threatened attack it reasonably appeared to the defendant that he was in danger of losing his life, or of there being inflicted upon him serious bodily injury, and in such event and under such circumstances, he cut and stabbed the deceased from the wounds inflicted from which later the deceased died, in such case the defendant would be justified under the law of self-defense, you will find him not guilty."

The first portion of this charge is not a proper application of the law of this case, because it entirely leaves out of consideration the effect of appellant's acts in provoking the difficulty. The deceased may have made an attack upon appellant both with a pistol and a knife, but if such an attack was induced by provocation upon deceased by appellant, the appellant would have no perfect right of self-defense. The second portion of the charge, proceeds upon the theory that there were two difficulties, and a cessation between the first and second, and that there was an abandonment on the part of appellant of the first difficulty, and renewal thereof on the part of the deceased of the second one. We think the trial court was right in appending the explanation for refusing to give such charge, because "there was no evidence of abandoning the difficulty." As we have heretofore had occasion to say, we think the trial court was warranted in assuming, and that we are warranted in drawing the conclusion from the evidence, that it was a continuous transaction, and that there was no abandonment on the part of appellant and his co-principals from the beginning to the end of this unfortunate affair.

Appellant filed many exceptions to the court's charge, all of which we have examined. Many of them question the propriety of the court in charging upon the law of principals, conspiracy and of provoking

the difficulty, on the ground that there was no evidence raising such issues. We do not discuss at length the various questions raised, believing that our discussion of the case up to this time, and the evidence set out at the beginning of this opinion, and as discussed in connection with the bills of exceptions which we have reviewed will sufficiently show that the court was well within his province in submitting the issues complained of for the determination of the jury.

There remains only one other assignment of error to discuss. Appellant filed an application for continuance on account of the absence of a number of witnesses, one of whom was Ernest Shelton. He claims that he would have been able to prove by Ernest Shelton that he was present at the time Tom Smith, the deceased, borrowed the pistol, and heard him make "certain statements and threats" against appellant. Ernest Barfield and Floyd Briggs were present at the trial and testified as to the same transaction. The statement in the application that Ernest Shelton would testify to "certain statements and threats" is entirely too general for the court to determine the bearing upon the question at issue. Barfield and Briggs having testified to the fact of deceased having borrowed the pistol, and this not being a controverted issue, we can not see where the absence of the witness Shelton worked any detriment to appellant. The application states that appellant could prove by Lee Walker, Ernest Walker, Jack Parrish, Paul Grant, Joe Gray, Joe Nunn, George Banks, Estes Banks and Ben Brawley that they were acquainted with the deceased and had seen him carrying a pistol, and heard him make threats against appellant, which they communicated. What these threats were is not set out in the application, but is only a general statement. Paul Grant, Joe Nunn, Estes Banks and George Banks were all at the trial as shown by the trial judge's qualification to the bill of exceptions. They were not called by appellant to testify, although he had an opportunity to do so, and the appellant himself, although testifying in the case, did not claim that any threats had been communicated to him by anyone. The judge's further qualification to this bill is to the effect that Lee Walker and Ernest Walker were living in Louisiana; and that he had been informed that Joe Gray was living in Oklahoma and had not been in Texas for twelve months; that the witness Jack Parrish was under suspended sentence for "bootlegging." It does not appear from the bill of exceptions or from any other authenticated record how the trial judge came into possession of the facts which he certifies to in connection with the bill of exceptions incident to the application for continuance. In the absence of a showing to the contrary it would be the duty of this court to presume that this information had come to his knowledge in the proper way upon an investigation in open court at the time the application for continuance was heard. All witnesses for whom the application was filed were either present at the trial or accounted for by the trial judge's qualifications to the bill, with the exception of Ben Brawley. In view of the fact that several witnesses were present by

whom appellant alleged in his application that he could prove communicated threats, but none of them having been called by him to the witness stand, and there being a failure on his part while testifying to show that any threats had been communicated to him, would warrant us in concluding that even if Ben Brawley had been present he likely would not have testified to the facts claimed in the application by appellant, or, if so, that it would not probably have been true. Furthermore, we do not believe that sufficient diligence is shown from the record in an effort to secure the attendance of the witness Brawley. We do not believe any error was committed by the court in overruling appellant's application for continuance.

Having found no error in the record of such a character as would justify a reversal in this case, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

November 30, 1921.

LATTIMORE, JUDGE.—Appellant insists in his motion for rehearing that his exception to the charge of the trial court for its failure to submit the theory of self-defense as against a knife attack on the part of deceased, was well taken. The matter was not discussed at length in the opinion. The trial court gave to appellant a more favorable charge on his right to defend against an attack by deceased with a pistol than appellant was entitled to. Such charge was given without being made subject to a decision by the jury of the question of conspiracy between appellant and his companions. If it had been found by the jury that appellant and his companions had conspired to kill deceased, and that in the consummation of such conspiracy the attack was made and the wounds inflicted upon him which resulted in his death, there would have been no question of self-defense involved. Nor do we think appellant entitled to the special charge submitting unqualified self-defense against a knife attack, which charge was asked and refused.

Consecutively stated as they affect this issue, the facts are that appellant stated that when the car in which he and his companions were, and that in which were deceased and his companions, were both stopped first, he went back to the other car and offered deceased a drink of whisky, which the latter refused but accepted one from Simeon Hays; that when the car stopped the second time he went to the car in which deceased was, climbed on the running board near deceased, and said to the driver of the car: "This is the fellow I want to see," and as deceased raised his hand with a pistol in it, appellant reached around the neck of deceased with one hand and caught the pistol and they

scuffled over it; that deceased shot him and he fell off the running board; that he then heard other shooting and got up, and when he did so he saw deceased in the rear of the car, and went toward the car; that as he approached the car deceased cut at him and he began cutting at deceased, not being able to state how many times he cut the latter. The facts from other witnesses show that at once after the first encounter at the place of the homicide deceased got out of the car and ran and was pursued and shot in the back, and kicked or "stomped" by some members of appellant's party; that as a result of this shooting the leg of deceased was paralyzed. He was then put back into the car from which he had fled, and was lying or sitting in the rear seat when appellant approached the car and the cutting was done. Just after being put back in the car and before appellant cut him, deceased was struck over the head with a flash light by appellant's brother, Simeon Hays. It was a dark night. Appellant did not claim that either he or deceased said anything just before the cutting began and at the time he approached the car. Based on these facts we conclude that appellant has not shown himself entitled to a charge on self-defense against a knife attack by deceased. Till he fled from the car after appellant was shot, it is not shown that deceased ever left said car. Appellant makes no explanation of his purpose in going back to said car and getting up on the running board, when he said to the driver that deceased was the fellow he wanted to see. He was perfectly aware that as a result of what took place at that time, he was shot in the body. In a moment or two he starts back to said car again in the darkness, and without a word of warning or explanation. He offers no word as to his motive or purpose in going to the car at this time. He says deceased struck at him then with a knife as he approached. It occurs to us that if he started at a man who had just shot him, his act and that of his adversary would take color from what had preceded. The transaction was continuous; events moved swiftly. The court told the jury that if he had the right to defend against the pistol attack, he should be acquitted whether he shot or cut deceased. We think this is all he was entitled to. If we take the State's evidence as a whole, it seems to clearly show an acting together between appellant and his companions in a preconcerted attack on deceased, and that they pressed the attack from different angles until mortal wounds were inflicted upon him. In such case there arose no self-defense. They stopped their car first on a bridge and compelled the stopping of the other which was behind them. After starting again they soon stopped their car, and when that in which deceased was riding attempted to pass them, one of appellant's companions threw himself upon the car and demanded that it be stopped. Immediately, according to the State witnesses, appellant went to the car and said that deceased was the s—n of a b—h that they were after, and attacked him with blows in the face and, as some of the witnesses said, by choking him. When the deceased defended and tried to get away he was caught, shot,

kicked, and after being put back in the car was cut in nineteen places with a knife. According to this record appellant appears to be the only one who used a knife upon the person of deceased. The doctor who attended him said that the death of deceased was caused by knife wounds. We are not inclined to think our former opinion in error on the point raised by this objection.

The matter of allowing appellant to attack the reputation of. Miss Edith Tittle was sufficiently discussed and we think correctly decided in our opinion. That appellant believed, or had reason to believe, her unchaste or of bad reputation, would afford him no justification for attempting to force her to drink whisky, or to make any kind of assault upon her while in the car with deceased. He swore that she was not offended by what he did, and nowhere in her testimony did she say that she was offended. This occurred but a short time after the parties left the dance and but a few moments before the killing occurred. Anything which elucidated the condition, feeling and disposition of appellant and those acting with him toward deceased and his companions, would seem to be admissible.

The other contentions of appellant in this motion for rehearing have already been discussed by us and we deem them without merit.

The motion for rehearing will be overruled.

*Overruled.*