T. C. JOHNSON v. THE STATE.

No. 13382. Delivered October 8, 1930.
State's Rehearing Granted February 11, 1931.
Appellant's Rehearing Denied February 10, 1932.

512

The opinion states the case.

*Ben Allred, Newton P. Willis,* and *H. Otto Studer,* all of Pampa, *Reynolds & Heare,* of Shamrock, and *Weeks, Morrow, Francis, Hankerson & Powers,* of Wichita, Falls, for appellant:

On the question of insufficiency of the evidence. (*Duncan v. State,* 258 S. W., 182; *Edmondson v. State,* 44 S. W., 154; *Rhea v. State,* 30 Texas Crim. Rep., 483, 17 S. W., 931, 39 Cyc., page 1479; *Anderson v. State,* 272 S. W., 173; *Arnett v. State,* 51 S. W., 383.)

Upon the question predicated upon the fact that threats were made. (Diggles v. State, 269 S. W., 89.)

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State:

On the proposition that a shorthand rendition of the facts may be

514

given without doing violence to the rule of hearsay or opinion evidence. (*Branch's Penal Code,* pp. 72-73; *Williams v. State,* 132 S. W., 348; *Meyers v. State,* 39 S. W., 111; *Hickok v. State,* 258 S. W., 624.)

MARTIN, JUDGE.—Offense, rape; penalty, ten years in the penitentiary.

This is a companion case to that of Davis v. State, reported in 116 Texas Crim. Rep., 558, 28 S. W. (2d) 168.

The prosecutrix, Mildred Brock, was a girl about sixteen years old, residing with her parents in Chillicothe, Texas, at the time of the alleged commission of the offense. In company with her sister, Ellen Brock Tedder, and two young business men of Chillicothe, prosecutrix left Chillicothe at night to go to McLean, where her fiance and many of her relatives resided. They arrived at Shamrock in an automobile at about four A. M. in the morning and in passing through that city were stopped and arrested by appellant and one Davis and all of them charged with vagrancy. The two young men paid the fines of the girls, but being without sufficient funds to pay their own, were thrown in jail by the two officers. Testimony for the state further shows that these officers assaulted and beat one of the male companions of prosecutrix at the time of their arrest. Prosecutrix and her sister further testified in substance that after the officers had imprisoned their two male companions they were taken out into the country by them, their lives threatened and both were ravished by the two, it appearing that prosecutrix was raped by both Davis and Johnson. On this trip into the country the officers were in possession of and drank whisky and according to prosecutrix, forced them to drink; that a square glass jar was dropped out on the ground on the trip, as well also as some chewing gum wrappers, a blank cartridge and Camel cigarettes. Witnesses searching the route traversed by them after the date of the alleged offense, found these articles. Other witnesses testified to having seen the officers with these two girls in a car.

Appellant denied the rape, but admitted that he and Davis took the two girls over to McLean to their relatives. He further testified that officers at Childress had telephoned him that there was a car with a couple of boys and girls in it drunk headed towards Shamrock and that he had better investigate them. He further introduced witnesses to contradict the testimony of prosecutrix and her sister to the effect that they were taken out in the country by the officers on the morning of the offense.

Complaint is made that appellant was forced to testify that he had made no effort to get hold of the officer at Childress who telephoned him about the four young people, as detailed above; that they were not at court and that he had not been over to Childress to find out who they were. The objection seems to have been that appellant was not responsible for their absence. The appellant saw fit to introduce as a circum-

stance justifying his conduct the fact that officers telephoned him from Childress but did not give their names. We think it was entirely permissible for the state to show that he failed to call these officers to corroborate his testimony upon this material matter and had not even tried to find out their names. It was clearly a circumstance which tended to discredit his testimony.

Exception was lodged to paragraph 8 of the court's charge because same was too restrictive and upon the weight of the evidence. Paragraph 8 is in the following language: "The witness, Leon Tedder, was permitted to testify in this case that during the month of December, 1928, he slept with the witness Ellen Brock Tedder all night. You are instructed that if you believe the said Leon Tedder slept with the said Ellen Brock Tedder, as testified to by the said Leon Tedder, then you may consider said testimony for the purpose of passing upon the credibility of the witness, Ellen Brock Tedder, and the weight to be given to her testimony, but you must not consider it for any other purpose."

Instead of limiting the testimony as the court did, he should have stricken it from the record. Appellant got more from the testimony and from the charge than he was entitled to under the law and is in no position to complain. Specific acts of misconduct which have not eventuated in an indictment for a felony or misdemeanor involving moral turpitude are not admissible to discredit a witness. Branch's P. C., sec. 168. The testimony of Leon Tedder was not admissible as has been held in a multitude of cases. Of similar testimony it was said by Judge Hawkins in the case of Hays v. State, 90 Texas Crim. Rep., 360, 234 S. W., 898, 901: "That specific acts of an immoral character with other parties cannot be shown as affecting the credibility of a female witness has been announced many times by this court, and is not an open question." Citing Bigliben v. State, 68 Texas Crim. Rep., 530, 151 S. W., 1044; Scott v. State, 79 Texas Crim. Rep., 474, 185 S. W., 994; Sapp v. State, 80 Texas Crim. Rep., 363, 190 S. W., 489; Jennings v. State, 80 Texas Crim. Rep., 450, 190 S. W., 733; Flewellen v. State, 83 Texas Crim. Rep., 568, 204 S. W., 657; Branch's Ann. Pen. Code, sec. 168.

Nor was its admissibility affected by her denial of the transaction. A witness may not be thus impeached upon a collateral and immaterial matter. Underhill's Crim. Evidence, sec. 376; Branch's P. C., sec. 165 and 178.

The testimony shows that appellant and his companion Davis both had intercourse with prosecutrix and it is insisted that the state should have been required to elect upon which of these acts it was asking for a conviction. The case of Johnson v. State, 110 Texas Crim. Rep., 292, 8 S. W. (2d) 121, is cited as sustaining appellant's contention. The Johnson case is obviously distinguishable from this case since the appellant in that case was tried and convicted on the theory that he was a principal.

In this case no charge on principals was submitted. Appellant was tried for his own act under the instructions of the court and could not have been convicted for the act of Davis upon the theory that he was a co-principal with Davis. The charge in the instant case, as it did in the case of Coots v. State, 110 Texas Crim. Rep., 105, 7 S. W. (2d) 539, excludes the idea that appellant was convicted as a principal for the act of his co-conspirator Davis. If it could be said that the jury may have convicted appellant either for his own act or that of his co-conspirator Davis, an election was necessary. It is sufficient answer to the contention of the appellant that a conviction was authorized upon no such theory.

The chewing gum wrappers, etc., detailed above were found by witnesses some three or four weeks after the date of the alleged rape. The testimony of their finding was objected to as being too remote. The objection went to the weight and not the admissibility of the testimony. Hickey v. State, 51 Texas Crim. Rep., 230, 102 S. W., 417.

This record shows that the state attached much importance to the fact that prosecutrix, Mildred Brock, made a statement detailing the facts of the offense to the county attorney in Wheeler county and that several days later her sister, Ellen Brock Tedder, made a statement to the same officer in Chillicothe, some distance away from Wheeler county, without having communicated with Mildred Brock about the contents of her statement. Such testimony was originally introduced by the state. It was apparently the theory of the prosecution that the statement of each of these witnesses was true because they agreed in all material parts without opportunity of consultation or fabrication and was therefore a strong circumstance of guilt. It was the theory of appellant that the testimony of these young ladies was a fabrication and was probably the result of an agreement between them and the two young men to file a suit for damages against the sheriff on account of the acts of his deputy, the appellant in this case. The appellant introduced some facts and circumstances tending to show that the original statement of Mildred Brock to said officer had in fact been communicated to her sister, Ellen Brock Tedder, at the time of the latter's statement. With an issue thus made as to whether the contents of the former's statement had been conveyed to the latter, the district attorney took the witness stand and over objection testified: "I can state positively that no information of the contents of this statement was conveyed to them (referring to the Brock family and Ellen Brock Tedder) nor did they have an opportunity to get the information."

This conveyed to the jury the statement of a fact which was clearly an opinion and a conclusion of the district attorney upon a disputed and material issue. The facts and circumstances introduced by appellant clearly show that the contents of the statement of her sister may have been communicated to Ellen Brock Tedder prior to the time she gave the statement to the officer. Although the testimony of prosecutrix and her

sister shows outrages committed upon them by appellant and Davis that if true were of a diabolical character, they both remained silent for several days after the outrage, although they had an opportunity to communicate same to their relatives and friends. We regard the issue of guilt as close and here express no opinion as to the sufficiency of the evidence further than the above. The testimony of the district attorney, quoted above, might not under other facts and circumstances be sufficient to cause a reversal, but under the particular facts of this case it may have been sufficient to convince the jury of the truth of the state's testimony and cause them to either convict the appellant or enhance his penalty.

Though not raised in the trial court or presented in argument, the facts of this case seem to raise the issue of passive acquiescence by prosecutrix. Stringer v. State, 102 Texas Crim. Rep., 333, 278 S. W., 208. We say this in view of another trial.

Because of the error discussed, the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon further consideration of this case we are of opinion that we erred in reversing same for the admission of statements given in testimony by District Attorney Braly. To make plain the reasons for this conclusion, it is necessary to recapitulate from the record. Two sisters, Mildred and Ellen, were together on the occasion of the alleged rape of Mildred. A few days after the occurrence and on Thursday Mildred made to the county attorney of Wheeler county a written statement detailing the transaction. Two days later, on Saturday, Ellen, at Chillicothe, made to the same official a written statement of said transaction. On the trial hereof Mildred's statement was introducsed by the state in connection with her re-direct testimony, as is more fully set out later. Ellen's statement was not introduced, appears nowhere in this record, and we find no effort made by the state to show similarity or difference between the respective statements.

We were in error in our opinion in saying "It was apparently the theory of the prosecution that the statement (i. e., the written statement) of each of these witnesses was true because they agreed in all material parts, without opportunity of consultation or fabrication, and was therefore a strong circumstance of guilt." We find upon closer examination no such theory suggested by the testimony. We were also in error in saying "Such testimony was originally introduced by the state," i. e., evidence of the making of the two similar statements, one by Mildred in

Wheeler county on Thursday, and the other by Ellen in Chillicothe on Saturday. As a matter of fact the state offered Naylor Pogue as its first witness, and in his direct testimony there is not a word in reference to any written statement by either girl. In his cross-examination the defense drew out of this witness the fact that Mildred made a written statement to County Attorney Allred at Wheeler. On re-direct examination this witness affirmed that he was not present in the room when the statement referred to was made, did not see Mildred sign it, and all he knew about it was hearsay,—did not know what she said.

Mildred Brock was the state's next witness, and nothing was asked her on direct examination about making any written statement,—but on cross-examination the defense elicited from her the fact that she had made a written statement to the county attorney of Wheeler county. On re-direct examination of this witness the statement made by her was identified and admitted in evidence, and is set out. The defense re-cross-examined her at length as to the comparison between her statement made as a witness here, and her written statement given to the county attorney. The state later offered Ellen as a witness, and in the latter part of her direct testimony she said she made a written statement to Mr. Allred,—but the state did not offer the statement or draw out of the witness a single fact contained in same. She affirmed that she had never seen any statement made by her sister, nor had she ever been told of the contents of any such statement. On her cross-examination the defense asked her about certain statements in her own written statement, and later went back in its examination to the written statement of the witness and there for the first time appears any question as to the similarity or dissimilarity between the statement made by her and the one made by Mildred.

In this condition of the record, and apparently for the purpose of meeting the insinuation of the defense that the testimony of Ellen was influenced in some way by the written statement made by Mildred, and that there was a frame up to prepare for a damage suit, the state introduced County Attorney Allred who swore that on Thursday after the alleged rape, at Wheeler, he took the written statement of Mildred; that no one was present when he took same; that he only had the original which he did not show or read to anyone; that he gave the written statement to Mr. White to convey to District Attorney Braly. Allred further testified that he talked to Mr. Braly over the phone, and the latter asked him to go to Chillicothe and get Ellen's statement as quickly as he could and before the parties had time for a conference, which he did the Saturday following. Allred said that he neither sent nor showed Ellen a copy of Mildred's statement, nor did he tell her what was in it. Evidently for the purpose of following up what became of Mildred's statement, the state then put on Mr. White who swore that he received the statement from Allred, took same and delivered it to District Attorney

Braly. That no one saw it except Clebourn Cash, mayor of McLean, who read it to witness in a car while on the way to where the district attorney was. Cash took the stand and testified that he read this witness' statement to White as they went along and that he had never told any one of its contents. The state then put on Mr. Braly patently to show that no improper use of Mildred's statement had been made of it after he received it from White. After detailing where he kept it and what he did with it, Mr. Braly wound up his testimony with the following statement: "I would like to state this with the court's permission, that I did not convey any information of the contents of this statement to Mildred Brock or Ellen Brock or as I recall any member of the Brock family at that time. I don't believe I ever have for that matter. They may have been before the grand jury as a witness and the statement or some part of it may have been read there, but I can state positively that no information of the contents of this statement was conveyed to them nor did they have any opportunity to get the information."

Appellant's bill of exception No. 24 sets out objection to a part of the above quoted testimony of Mr. Braly on the ground that same was the opinion of the district attorney, that same was not competent to contradict Mr. Allred when he said that Ellen told him the Pogue boy had told her what was in Mildred's statement. We might digress here to say that nowhere in the record do we find that Ellen ever told Allred that the Pogue boy had told her what was in Mildred's statement.

The effect, importance, and weight of any given testimony is to be determined from its relation to other matters. The jury in this case had heard Mr. Braly testify how and when the written document came into his possession. They knew it was Mildred Brock's statement. They knew that Pogue had sworn that he never saw said statement; that Allred had sworn that no one was present when said statement was reduced to writing, and that he made no copy and told no one of what was in same; he specially denied telling Ellen; that he gave it to White; that White took it to Braly, and that no one saw it except Cash, who testified he had told no one of its contents. Nor can we lose sight of the fact that what was in Ellen's written statement was not before the jury, and its truth or falsity was therefore a matter of no relevance to any issue in this case. In such situation we might well quote with approval what was said by Judge Davidson in Jinks v. State, 35 Texas Crim. Rep., 365, 33 S. W., 868, to the effect that unless incompetent evidence could have enhanced the penalty or brought about a different result, its admission would not justify or call for a reversal, and let the matter go at that, but manifestly he was undertaking to make no statement affecting the information or opportunity for same, which the Brock's may have gotten relative to Mildred's statement, before it came into his hands. Manifestly the jury understood that, after stating in detail what he had done with it

.since he had had it in his hands, the expression complained of in appellant's bill of exception No. 24 was but Mr. Braly's shorthand rendering of the facts known to him and relating to his care and keeping of this document during the time it had been in his possession. The jury were men of supposedly ordinary intelligence and could hardly have been misled by Mr. Braly's statement into believing anything else than what we have indicated.

In appellant's resistance to the state's motion for rehearing he sets up that if we grant the state's motion there are other bills of exception presenting complaints which were not discussed in the original opinion, which deserve attention and probably would call for a reversal of the case, such as the refusal of his continuance, complaint of improper argument, and the admission of certain testimony. We have examined these matters and are of the opinion that error appears in none of them.

The facts have been fully considered. The injured female was a girl under sixteen years of age at the time of the alleged rape. She swore to a state of facts showing one of the most outrageous courses of conduct by men in official position which has ever come to this court. She said Johnson threatened her, put his hand on his gun, jerked off her bloomers, pushed her into the back seat of the car, and had intercourse with her, she crying all the time and beginning him to stop. She did not consent. Appellant took the stand and denied the intercourse. The solution of facts is for the jury. They believed the state witnesses.

The state's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the court below is now affirmed.

*Affirmed.*

#### ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's motion is predicated on bills of exception Nos. 1, 11, 3, 7, 7a, 5, 6, 19, 20, 30 and 21. We state them in the above order because they so appear in the motion. In support of the motion a strong written argument has been filed urging that we were in error as shown in some of the bills mentioned, which written argument was supplemented by a forceful oral presentation of appelant's contentions.

Bill No. 3 complains of the court's refusal to compel the state to elect between acts of intercourse. Bills 5 and 6 complain of the admission of evidence regarding the finding, some time after the date of the alleged offense, of chewing gum wrappers, a square glass jar and other small articles claimed by prosecutrix and her sister to have been thrown away by appellant and his companion Davis on the date of the alleged offense. The questions presented in these bills (3, 5 and 6) were considered in the original opinion and were correctly decided against appellant's contention. We see no necessity of again reviewing those matters.

It is again insisted that in granting the state's motion for rehearing

and affirming the judgment we were in error in our holding regarding complaint of testimony given by the district attorney Braly. We have again examined the record upon this point. The manner in which the question relative to statements of prosecutrix and her sister got into the record is believed to be correctly set out in the opinion on the state's motion for rehearing. The conclusion therein reached with reference to the district attorney's evidence regarding the matter is thought to be correct, and will, therefore, not be again discussed.

Bill No. 1 complains of the court's action in denying application for second continuance because of the absence of certain named witnesses. The motion for new trial was based in part on this same complaint. The bill covers ninety pages in the transcript. It contains the application for continuance, the exhibits attached thereto, the affidavits and evidence submitted on the motion for new trial. All of these have been carefully reexamined. The bill is too long to undertake here to discuss it in detail. After another careful review of the question we are not impressed with the soundness of appelalnt's contention that the court committed error in denying the continuance, or in overruling the motion for new trial predicated on such action.

Bill No. 11 brings forward complaint of the court's charge on alibi, upon the ground that the same shifted the burden of proof. The instruction given is in form the same as that found in Leahy v. State, 111 Texas Crim. Rep., 570, 13 S. W. (2d) 874. The wording of the charge there given was not approved, but it was held that the instruction could not have misled the jury. We entertain the same view regarding the charge here.

Bills 7 and 7a relate to the same subject. Appellant testified in his own behalf. On cross-examination counsel representing the state commenced to inquire about whether he had formerly lived in Arizona. This was objected to as being immaterial. State's counsel told the court that he would follow it up by showing its materiality. He later asked appellant if he had ever been arrested, tried or convicted, for impersonating a federal officer in Arizona, to which appelant answered that he never had; in respones to another question he said he had never been convicted in the state of Arizona for anything in the federal or state courts. No objections were interposed to the questions last mentioned. Later on, when counsel asked appellant if he had not been "arrested" in Flagstaff, Arizona, objection was interposed upon the ground that the inquiry was improper unless it could be shown that the arrest was followed by indictment which preferred a felony charge or prosecution for a misdemeanor involving moral turpitude. The court sustained this objection. As we understand the bill, counsel for appellant then requested the court to withdraw from the jury all. of the inquiries with reference to whether appellant had been convicted for impersonating a -federal officer in the

state of Arizona, which the court declined to do. In view of the result of the inquiry it perhaps would not have been improper for the court to have withdrawn it, but in view of the negative answer of appellant we can see no harmful effect which could possibly have resulted. There is nothing in the bill which impresses us with the idea, which seems to be entertained by appellant, that state's counsel was pursuing an inquiry which he knew to be improper.

Bill of exception No. 19 reflects that prosecutrix and her sister testified that on the occasion of the alleged rape under investigation in the present trial, and at the scene of the alleged offense, two negroes, a man and a woman, came by the car in which appellant and his companion Davis, and the two girls, were, and that both Johnson and Davis cursed the negroes and told them to go on, which they did; that the negroes were traveling south, or southwest. We understand from the record that the direction the negroes were walking was towards Magic City. Upon cross-examination of prosecutrix, counsel for appellant evidently asked her if she knew where the negroes were now, to which she replied, "No, I don't know where they are now." This inquiry from appellant first brought into the record any question as to the whereabouts of the negroes at the time of the trial. Later, the state used a witness, L. P. Holland, who lived at Magic City. The witness drew a map indicating various situations, indicating the roads that were used traveling from Magic City to Shamrock. He testified that there was a negro family consisting of a man and his wife and children living in a house which witness had located on the map. Witness also stated that these were the only negroes who lived in that locality. The witness further testified that on the morning of the alleged rape he saw these two negroes coming into Magic City. He gave the time as between nine and eleven o'clock in the forenoon. The tesitmony of Holland was objected to as being irrelevant and not connected with any facts or circumstances in the case, and as not being competent testimony to corroborate the prosecuting witness on her statement that the negroes were at the scene of the alleged rape. The testimony objected to may not have been of very strong probative force, but this went more to its weight than to its admissibility. The trial judge was in a position to understand the map which had been drawn by the witness and used by him in giving his testimony, and could better appraise the admissibility of this testimony than it is possible for us to do. The bill does not show the testimony to have been inadmissible.

Bill 20 also relates to these negroes. It complains because the state was permitted to prove by the same witness Holland that he had not seen the negroes since about March 17, 1929, and that in May of that year he went over to where the negroes had lived and they were not there. Appellant objected to this testimony on the ground that it was not shown that appellant was responsible for the absence or disappearance

of the negroes. It will be remembered that appellant had first injected into the case the fact that the prosecuting witness at the time of the trial did not know where these negroes were. Under these circumstances it would not be held error for the witness Holland to testify that the negroes had left the neighborhood. We find nothing in the bill, nor in the statement of facts, which carries with it the charge or implication that appellant had anything to do with the disappearance of these witnesses, or that process had ever been issued for them. If the state had proven that process for the witnesses had been issued, it would have perhaps carried an implication that appellant might have been responsible for getting the witnesses out of the way as he is shown to have been a deputy sheriff at the time of the alleged offense, and up to the time of the trial.

We note that to support his contention with reference to bill 20 appellant in his original brief relies on Askew v. State, 59 Texas Crim. Rep., 152, 127 S. W., 1037; Oliver v. State, 96 Texas Crim. Rep., 633, 259 S. W., 589; Matthew v. State, 109 Texas Crim. Rep., 560, 5 S. W. (2d) 994. In addition to these may be noted as bearing on the subject Schultz v. State, 97 Texas Crim. Rep., 473, 262 S. W., 493; Parker v. State, 86 Texas Crim. Rep., 222, 216 S. W., 178; Funk v. State, 84 Texas Crim. Rep., 402, 208 S. W., 509. In none of the cases mentioned was the question of absence of the witness introduced by appellant as in the present case; in most of them the facts appearing in the development of the case, or the evidence offered by the state regarding the absence of the witness, carried with it an unsupported implication that appellant was responsible for the witness' disappearance.

In appellant's motion for rehearing he refers us to bill of exception 30, regarding the argument of the district attorney. We find no bill of exception 30 in the transcript; from the context of the motion we assume that appellant refers to special charge No. 15, found on page 23 of the transcript, in which the court was requested to instruct the jury not to consider the statement made by counsel in his closing argument, as follows: "That if defendant stood so well in Wheeler County, why didn't he have some people here from Wheeler County to testify how good he was and how good his standing was."

The court declined to instruct the jury to disregard said argument. In the absence of any bill of exception pointing out why or how such argument was improper we are bound by the presumption that the court in declining to give the charge acted properly.

Bill of exception 21 complains of the admission of testimony from the witness McMurtry. Prosecutrix and her sister had testified that on the day of the alleged rape, and while they were on the road, some boys had been following them; that appellant stopped his car at a certain point in the road, fired off his pistol and motioned for the boys to go on, which they did. One of the girls had testified that there was a house not far from

where this occurred, with an orchard near the house. McMurtry testified, over objection, that he heard a shot on the road south of his house, and saw a touring car and a closed car on the road on the Sunday morning in question, and that his attention was attracted to it by the shot; that he did not know which way the cars went after this time. Witness further says that there was a little orchard between his house and the road, but not between where witness was and the cars in the road. The description of the cars as given by McMurtry corresponded with the cars occupied by appellant and that in which the boys were riding. We perceive no error in the admission of this testimony. While the witness McMurtry was unable to identify the parties in the cars, the incident itself, and the location, makes it reasonably certain that the parties McMurtry saw were the ones referred to by prosecutrix and her sister.

In the argument on rehearing our attention is particularly directed to a statement in the original opinion to the effect that the evidence raised the issue of passive acquiescence by prosecutrix, and it was thought at that time the matter had not been raised in the trial court. Reference is made in that opinion to Stringer v. State, 102 Texas Crim. Rep., 333, 278 S. W., 208, 209. Special requested charges 6 and 9 are referred to as having been asked upon the subject of passive consent, and their refusal is urged as error. The requested charge, for the refusal of which the Stringer case was reversed, is copied in the written argument on appellant's motion for rehearing, and is in the following language: "Mere intercourse coupled with passive acquiescence, is not rape by force. There must be resistance upon the part of the alleged raped female, dependent upon the circumstances surrounding her at the time and the relative strength of her and the defendant, and every exertion and means within her power must be made to prevent the penetration of the person of the woman; and unless such means and exertion are used, the defendant should be acquitted, and if you so find or have a reasonable doubt as to the facts, you will acquit the defendant."

At the instance of appellant, the court gave three special charges upon the subject. In special charge No. 7 he told the jury that if appellant had sexual intercourse with prosecutrix with her consent, or if they had a reasonable doubt thereof, they should acquit appellant. In special charge No. 10 the jury was told that it was not necessary that consent be in words, but that if prosecutrix yielded her person to appellant such would in law be consent. The other special charge given at the request of appellant, (shown in the transcript to be special charge eleven) is in the exact language of the charge which was refused in the Stringer case. It evidently was copied from the opinion in that case. The court having recognized the issue of passive acquiescence, and having given the charges referred to, properly refused special charges 6 and 9 upon the same subject.

Appellant further urges that this court should hold the evidence insuf-

ficient to support the verdict. We have again examined the nauseating details upon which such contention rests. It may be admitted that the facts furnish grounds for a strong argument in support of such position. Viewing the situation as understood in the light of subsequent events it is difficult to understand why prosecutrix did not make report of the matter sooner. On the other hand, if prosecutrix's evidence be true, the conduct of appellant and Davis at the time of the arrest of the girls and the boys who were with them, their subsequent threats to further prosecute the girls, their suggestive reference to the pistols with which both appellant and Davis were armed, seem to furnish grounds supporting the reason given by prosecutrix that she was afraid of them, and submitted because of such fear, and for a like reason refrained from reporting the rape. It can not be conceived that able counsel representing appellant omitted making before the jury the most of the same incidents here urged as not supporting the verdict. There are facts in the record which do support it. If we should agree with appellant's contention we would simply be substituting our judgment for the jury's upon a fact issue.

We are constrained to overrule the motion for rehearing.

*Overruled.*