H. Gerald POE, Appellant,

v.

The STATE of Texas, State.

No. 2–81–099–CR.

Court of Appeals of Texas,
Fort Worth.

March 24, 1982.

Discretionary Review Refused
May 26, 1982.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for State.

Before HUGHES, JORDAN and BROWN, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted by a jury of the offense of murder and punishment was assessed by the jury at twenty-five years confinement in the Texas Department of Corrections. The appeal is based on three grounds of error.

The judgment of the trial court is affirmed.

Briefly stated, the facts reflected in the record in this case show that Tommy Rainwater was shot to death by appellant at sometime after 2:00 a. m. on the morning of June 13, 1978.

Rainwater and two female companions had entered Sambo's Restaurant on Highway 80 West in Fort Worth, Tarrant County, about 12:30 a. m. on that morning, and appellant, another man and a woman came in to the same restaurant around 2:00 a. m. on that date. The evidence is undisputed that shortly after appellant came into the restaurant he became loud, profane and abusive, yelling at everyone in general in the restaurant, threatening to "whip" anybody and everybody there. He referred to everyone in the restaurant in vulgar, gutter-type language. Finally, he went over to the table occupied by Rainwater, whom the evidence shows appellant had known for some years, called Rainwater the same vile

names he had been previously using generally, and repeatedly asked him to get out of the booth and fight. Rainwater had not said a word to appellant before this event, and there is no evidence that he was at any time abusive or threatening toward appellant. He was sitting at his booth with two women companions, minding his own business. When appellant drew back his fist to hit Rainwater, the acting manager of Sambo's intervened, grabbed his arm and forcibly ejected appellant from the restaurant.

Unfortunately, appellant returned to the restaurant with a gun, and was heard to mutter to one of his companions, "I just might kill that SOB." Rainwater and his two companions paid their check and left the restaurant.

Rainwater had just stepped out the front door of the restaurant when appellant followed him out onto the pavement outside the restaurant and began firing shots from a semi-automatic weapon at Rainwater. When he heard appellant talk to him, just outside the restaurant, Rainwater turned around and it was then that appellant began pumping shots into the victim. According to witnesses who were present at the time, appellant apparently emptied his gun, firing three shots while Rainwater was still standing, and then three more after the victim was lying on the ground, mortally wounded. According to the trial testimony Rainwater did not have a weapon of any type on him at any time, and at no time did he threaten or molest appellant in any way. Appellant testified that Rainwater was advancing on him at the time he commenced firing, but at least five other witnesses, present in the restaurant at the time, refuted this.

Rainwater died from the gunshot wounds at the scene of the shooting within fifteen minutes.

The first two grounds of error are closely related and will be discussed together. In the first ground appellant urges error in the trial court's refusal to grant a new trial because of newly discovered evidence. The second ground of error asserts that the prosecution suppressed evidence beneficial to the appellant.

Appellant's theory about the events related above was that he was acting in self defense and that at the time he started shooting Rainwater was advancing on him. This contention had no other support in the evidence.

At the hearing on the motion for new trial appellant introduced testimony from H. H. Robinson, operator of the Highway Motel on Highway 80 West in Fort Worth, to the effect that shortly before the June 13 shooting, perhaps ten days or two weeks prior thereto, Rainwater, the deceased, in his presence and in the presence of E. K. North and son Bruce North, a sheriff's deputy, who also verified Robinson's testimony, had bragged to them about how tough he was and how, recently, he had taken a gun away from a man in a bar and "beat the hell out of him."

Don Stewart, a district attorney's investigator, admitted that Robinson and Bruce North had told him about Rainwater's bragging of taking the gun away from another man in a bar, and that he had reported this to the assistant district attorney who tried this case. Robinson also testified that during appellant's trial in April of 1979 he had called defense counsel Ward Casey's office to tell him about Rainwater's statements to him and the other men. Casey was out at the time and Robinson told his secretary he wanted to help Casey's client, appellant here, and left word for Casey to call him back, which Casey never did.

It is this set of facts, related above, that are involved in appellant's first two grounds of error. He contends that Robinson's testimony about Rainwater's brags was newly discovered evidence which could have changed the jury's verdict of guilty, and also that the State wrongfully withheld and suppressed this exculpatory evidence, Robinson's testimony, from appellant during the trial. We disagree with both of these contentions.

■ Before a new trial will be granted on newly discovered evidence, it must be shown that: (1) the newly discovered evi-

dence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is *admissible* and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr. App.1979); *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr.App.1978). Also, a motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court. *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976, cert. denied), 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811.

We think the following discussion is applicable to and is dispositive of the first two grounds of error.

■ The evidence offered by Robinson about Rainwater's brags was obviously hearsay. Robinson related, at the hearing on the motion for new trial, what Rainwater, of course deceased at that time, purportedly told him about a single incident of taking a gun away, from a man in the bar and beating him with it. There was no other such testimony and none offered. This statement of Robinson's, offered for the truth to show Rainwater's character and propensities, was rank hearsay and thus inadmissible, even though it came in without objection. Hearsay, even though admitted without objection, has no probative value and is meaningless. It would not be, or should not be, admitted even in the event of a new trial.

Additionally, this testimony of Robinson's, who incidentally was admittedly opposed to Rainwater and of the belief that killing was good for him, was available to appellant during his trial in April of 1978. Robinson testified that he had tried to get in touch with appellant's defense counsel, telling his secretary that he had something that would help appellant, but that the defense counsel never returned his call. We think this showed a lack of diligence in securing this newly discovered evidence. After the trial, Robinson called defense counsel and related the story to him.

■ For these reasons, we hold that the trial court did not err in refusing appellant's motion for new trial.

■ It is appellant's argument that the State should have disclosed their knowledge of Robinson's story about Rainwater's brag because it might arguably have aided the defense's self defense theory. This contention is based on the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. We do not think this evidence, hearsay at best, was *material* as that term was construed in *Brady*. There was no evidence presented from any source at the hearing on the motion for new trial that Rainwater had in fact ever disarmed someone who had pulled a gun on him. There was nothing but Rainwater's hearsay testimony to that effect. Before this alleged exculpatory information could have been beneficial to appellant, under any circumstances, it would have to be introduced, at some point, in the form of admissible evidence. No admissible evidence on this matter was ever offered. The "exculpatory" evidence was nothing more than a rumor which never developed into solid, admissible evidence.

■ There was no harm shown by appellant because of the failure of the State to disclose this hearsay information. *Gray v. State*, 99 Tex.Cr.R. 484, 270 S.W. 173 (Tex. Cr.App.1925); *Hill v. State*, 504 S.W.2d 484 (Tex.Cr.App.1974). In both these cases it was held that failure of the state to disclose hearsay evidence which would not be admissible at trial, was not cause for reversal. In these cases it was also held that even if the State had purposely withheld such hearsay information from appellant, such action would not be cause for reversal, and that there had been a total failure to show harm. We think the same situation prevails in this case, and that the failure to disclose Robinson's information about Rainwater's brag was harmless. The proffered testimony, as shown, could not benefit appellant. See also *Stone v. State*, 583 S.W.2d 410 (Tex.Cr. App.1979).

█ For another reason we think that the failure of the State to disclose this allegedly strong evidence that Rainwater could have been the aggressor in the early morning hours of June 13, 1978 was harmless. The evidence at trial, from uninterested, impartial witnesses who witnessed this brutal murder, was that appellant shot Rainwater in cold blood, after cursing and abusing him previously and trying to pick a fight with him. There is no evidence whatever that Rainwater committed any aggressive, aggravating, or even retaliatory, acts. The only evidence to sustain appellant's trial theory of self defense was his testimony that Rainwater "was advancing upon him," which testimony was refuted by all other witnesses. We do not think that even admissible evidence that Rainwater had once, shortly before the June 13, 1978 incident, disarmed an armed man, would have created in the minds of the jury "a reasonable doubt that did not otherwise exist." The proffered hearsay testimony was not material or relevant to the question before the jury.

Appellant's first two grounds of error are overruled.

Appellant's third ground of error alleges error on the part of the trial court in admitting, at the punishment phase, over objection, evidence of an extraneous offense which had not resulted in a final conviction.

Appellant, at the punishment phase of his trial, introduced several character witnesses to testify to appellant's good reputation in the community as a peaceful and law abiding citizen. On cross-examination of both of these witnesses, the State asked several "have you heard" questions of these witnesses, including a question about appellant's "pulling a knife" on one Sylvia Watson. The same questions were asked of one of these two witnesses about another knife incident as well as use of a gun at a private club. No objection was made to any of these "have you heard" questions asked of these two witnesses, Joe May and Allen Miller.

On redirect examination of the witness Miller appellant's counsel asked him if he had heard that Sylvia Watson was one of these witnesses who had been subpoenaed by the State but was not called to testify in this case. The implication was plain that the State was trying to hide something from the jury and that they had a witness who might hurt the State's cause if she were produced as a witness. After this, the State called Sylvia Watson, who was the owner-operator of Nita's Nitey, a bar. Mrs. Watson testified that appellant, on the night of June 12, 1978, had used vile, vulgar and abusive language to her, and that later that evening, prior to the killing of Rainwater by appellant in the early morning of June 13, 1978, kicked the door of her apartment open and threatened her with a knife. It was undisputed that appellant was neither charged with nor convicted of this offense.

It is appellant's position on appeal that the admission of this extraneous offense was so prejudicial to him as to cause a reversal of his conviction. We do not agree.

No objection was made by appellant to this "have you heard" question relating to the threat with a knife on Sylvia Watson, and any objection thereto was waived.

█ Ordinarily, and generally speaking, evidence of other criminal acts which have not resulted in a final conviction, is not admissible on the issue of character, reputation, or prior criminal record. However, in this case, and under the situation alluded to above, we think the State was justified in going into the Sylvia Watson matter. It is recalled that appellant's counsel asked the Witness Miller if he knew the State had subpoenaed Sylvia Watson but had not called her as a witness. This question by counsel indisputably put the State in a bad light and made it appear to the jury that the State was doing something improper. We think Sylvia Watson's testimony, adduced only after defense counsel had asked the witness about her being subpoenaed but not produced, was admissible primarily to answer appellant's contention that her testimony was important to the case, and possibly adverse to the State and that the State was suppressing it. It has

**890**

been held that where the defense calls attention to the absence of a potential State's witness, the State has the right to explain the absence of that witness. *Johnson v. State*, 119 Tex.Cr.R. 510, 45 S.W.2d 989 (1930); *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978), cert. denied, 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784. We think it therefore follows that where the defense impugns the integrity of the State by alluding to a witness the State supposedly refuses to produce, the State may then call that witness so that the jury will know what the witness would say. We think the door was opened for Watson's testimony. *Williams v. State*, 464 S.W.2d 842 (Tex.Cr. App.1971).

This testimony was also admissible to refute the insinuation that the State had no good faith basis for asking appellant's reputation witnesses these "have you heard" questions. By his questions on redirect examination, appellant's counsel repeatedly asked questions which implied that the extraneous offenses referred to were mere figments of the prosecutor's imagination, or that they have been invented. We think the situation is analogous to invited jury arguments and that the testimony of Sylvia Watson, under the circumstances, was properly admitted.

We also hold, however, that even if Sylvia Watson's testimony about the knife threat made to her on the night preceding the shooting of Rainwater was improperly admitted as evidence of an extraneous offense which did not result in a conviction, that the error, if error it was, was harmless in view of the evidence reflected in this record as a whole. In view of the overwhelming evidence, and the volume of it, from impartial witnesses, that this was an unprovoked, aggressive and cold-blooded killing, and the fact that such evidence was undisputed by all witnesses except appellant, we cannot hold that Sylvia Watson's testimony probably influenced the jury in their assessment of punishment. We think the result would have been the same without her testimony.

Appellant's third ground of error is overruled.

The judgment is affirmed.