## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
## NO. 02-17-00232-CR


MELVIN LINN KNOX                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1468054D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

The State charged Appellant Melvin Linn Knox with the offense of murder and Knox pleaded guilty without an agreement as to punishment. Following a sentencing hearing, the trial court sentenced Knox to forty years' confinement. Knox subsequently filed a motion to recuse based solely on a brief exchange

---

[1]*See* Tex. R. App. P. 47.4.

between the trial judge and the victim's brother that occurred at the conclusion of the victim's brother's testimony provided during the sentencing hearing. Ultimately, Knox's motion to recuse was referred to the presiding judge of the Eighth Administrative Judicial Region of Texas, and, after conducting a hearing in which Knox chose not to put on any evidence, that judge denied it.

Knox raises four points challenging the denial of his motion to recuse. Because we hold that the recusal judge did not abuse his discretion by denying Knox's motion, we will affirm.

## II. BACKGROUND

This case began in 1973 with the murder of Donald Rodgers in Knox's home.[2] At the time of the murder, Donald was fourteen years old and Knox was fifteen years old. Although the State filed a petition against Knox for Donald's murder in 1973, it was dismissed for insufficient evidence and the case went cold.

In 2015, Jeff Rodgers, Jr., Donald's older brother, contacted the Fort Worth Police Department to inquire about Donald's case. The FWPD reopened the investigation into Donald's murder, and after obtaining new evidence, the State arrested Knox and charged him with murder.

---

[2]Knox murdered Donald by shooting him with a bolt-action shotgun and stabbing him seven times. Knox then threw a rock through the sliding glass door and knocked over a living-room television set to make it look like there was a break-in and that an intruder had murdered Donald.

On June 28, 2017, Knox pleaded guilty to the offense of murder without an agreement as to punishment. The trial court held a sentencing hearing on July 10, 2017. The State called five witnesses and Knox called three witnesses, and the trial court admitted sixteen exhibits into evidence.

One of the State's witnesses was Jeff. Following Jeff's testimony, the trial judge had the following exchange with Jeff:

THE COURT: Let me ask you something. Now, I'm only asking you this because I know you --

THE WITNESS: Yes, sir.

THE COURT: -- and that you've spent a lot of time over there with the juveniles.

THE WITNESS: That's correct.

THE COURT: This incident happened when both your brother and Mr. Knox were juveniles.

THE WITNESS: That's correct.

THE COURT: I think your brother was 14.

THE WITNESS: That's correct.

THE COURT: Mr. Knox was 15. Which was a long time ago, you're right. It was almost 44 years ago and it was tragic. What do you feel justice is in your mind?

THE WITNESS: My family and I have talked about this in depth for the last several months and we've essentially determined that justice would be at least 30 years. I understand the law allows for two to 99 years. I understand there's circumstances that may not allow for all of that. But, you know, it was a juvenile -- it was a juvenile crime back then and it is my belief that it did not have to happen the way it did. Had he come forward at that time and done the right thing, based on my knowledge of the juvenile justice system, this matter

3

would probably be all resolved by now.  You know, it wasn't.  And there was a series of [sic] lasts for 44 years that covered this up, so . . .

THE COURT:  Did you believe back then, after you heard the story, that Mr. Knox was guilty back then, even back in '73 or did you actually believe that someone had broke into the home?

THE WITNESS:  Frankly, Judge, I wasn't aware of the details until later.  I disconnected myself very quickly, went back home and it wasn't until many years later that I found out -- I was under the impression that somebody had been arrested.  I didn't follow through with it and my parents didn't share a lot with me because right after I graduated I was commissioned and went away to the Air Force.  I wish it had been handled earlier, that way my parents would have known that somebody was held accountable for the loss of their son, their fifth child, and that still hasn't happened yet.

THE COURT:  All right.  Thank you, Mr. Rodgers.  Appreciate it.

THE WITNESS:  Sure.  Uh-huh.

After hearing the remainder of the punishment evidence, the trial court sentenced Knox to forty years in the Institutional Division of the Texas Department of Criminal Justice.  The trial court indicated that the factors that supported its sentencing determination were Knox's use of a bolt-action shotgun, then stabbing Donald seven times and staging the scene to look like there was a break-in.  According to the trial court, these actions clearly demonstrated that Knox knew what he was doing.  The trial court also noted that Knox's six subsequent convictions for various offenses coupled with Knox's admission that he had been a drug dealer demonstrated a life marked by criminal activity during the years since Donald's murder.  Indeed, when pointedly asked by the trial court

4

whether Knox honestly believed that he deserved probation as an appropriate punishment for Donald's murder, Knox conceded, "Not really, sir."

On August 7, 2017, Knox filed a motion for new trial and motion to recuse the trial judge, Judge Wayne Salvant, based solely on the above-quoted exchange between Judge Salvant and Jeff. Judge Salvant forwarded the motion to recuse to Judge David Evans, presiding judge for the Eighth Administrative Judicial Region of Texas. The State filed a response to the motion to recuse, which included affidavits from a prosecutor and Jeff. The prosecutor indicated that she "personally heard Judge Salvant state he knew Mr. Jeff Rodgers ('Mr. Rodgers'), the victim's brother[,]" and that "[a]t first, it concerned me[.]" However, the prosecutor stated that by the time Judge Salvant finished his question and explained how he knew Jeff, she was no longer concerned. The prosecutor further stated that Judge Salvant later communicated to the prosecutors and Knox's counsel in chambers that

> he does not know Mr. [Jeff] Rodgers personally. When Judge Salvant saw Mr. Rodgers in the courtroom, he recognized him but did not know from where. It was only when Mr. Rodgers testified he retired from Tarrant County juvenile services that Judge Salvant realized from where he recognized Mr. Rodgers.

Jeff's affidavit likewise confirmed that during his employment with Tarrant County Juvenile Services, he had known Judge Salvant professionally through brief interactions during yearly tours that Jeff would lead for Tarrant County judges. But Jeff stated that other than brief interactions to answer questions on those

5

tours (of which Jeff could recall no specific conversations), he had no other interactions with Judge Salvant.

After conducting a hearing, Judge Evans denied Knox's motion to recuse. This appeal followed.

### III. POINTS ON APPEAL

Knox raises four points of error asserting an abuse of discretion by Judge Evans in denying the motion to recuse Judge Salvant because (1) Judge Salvant is a material witness, (2) Judge Salvant's impartiality might be reasonably questioned, (3) Judge Salvant has a personal bias or prejudice concerning the subject matter or Knox, and (4) Judge Salvant has personal knowledge of disputed evidentiary facts.

### IV. STANDARD OF REVIEW

We apply the rules of civil procedure to review the denial of a motion to recuse in a criminal case. *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (orig. proceeding); *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). In doing so, we review the denial of a motion to recuse for an abuse of discretion. Tex. R. Civ. P. 18a(j)(1)(A); *Gaal v. State*, 332 S.W.3d 448, 456 (Tex. Crim. App. 2011); *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992), *cert. denied,* 508 U.S. 918 (1993).

To determine whether the court hearing the motion to recuse abused its discretion, we must determine whether it acted without any guiding rules or principles. *Abdygapparova v. State*, 243 S.W.3d 191, 197–98 (Tex. App.—San

6

Antonio 2007, pet. ref'd); *Mosley v. State*, 141 S.W.3d 816, 834 (Tex. App.—Texarkana 2004, pet. ref'd) (adding that the "mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge does not demonstrate [an abuse of discretion]").  In other words, "an appellate court should not reverse a trial judge whose ruling on the motion was within the zone of reasonable disagreement."  *Kemp*, 846 S.W.2d at 306.  In reviewing the denial of the motion, we must consider the totality of the evidence elicited at the recusal hearing.  *Id.*

## V.  DISCUSSION

### A.  Points One and Four

In his first point, Knox alleges that Judge Salvant should be recused because he is a material witness concerning Knox's motion for new trial.  Knox contends that the extent of the relationship between Judge Salvant and Jeff remains unknown.  In his fourth point, Knox similarly alleges that Judge Salvant has personal knowledge of disputed facts.

Texas Rule of Civil Procedure 18b states, in relevant part, that "[a] judge must recuse in any proceeding in which:  the judge has personal knowledge of disputed evidentiary facts concerning the proceeding."  Tex. R. Civ. P. 18b(b)(3).  Knox fails, however, to identify any knowledge of a disputed evidentiary fact possessed by Judge Salvant.  Indeed, our review of the record reveals nothing to support Knox's bare assertion to the contrary.  *See Yorkshire Ins. Co. v. Seger*, 279 S.W.3d 755, 774 (Tex. App.—Amarillo 2007, pet. denied) (refusing to "find

recusal appropriate solely on the basis of speculation regarding facts that may or may not be known by the presiding judge" when the party seeking recusal "fail[ed] to identify any specific knowledge of disputed evidentiary facts" purportedly held by judge).

We also cannot agree with Knox's assertion that "the extent of the relationship between the trial court and Mr. Rodgers remains unknown." The State's response to Knox's motion to recuse provided affidavit testimony from a prosecutor and Jeff Rodgers explaining that Judge Salvant only knew Jeff from brief, unremarkable, professional interactions when Jeff would lead Tarrant County judges on yearly tours of Tarrant County Juvenile Services facilities. Moreover, Knox did not object to the admission of these affidavits at the recusal hearing or put on any testimony or evidence contradicting them.[3]

*Gentry v. State*, an unpublished case in which recusal was required due to a judge's personal knowledge of disputed evidentiary facts, is instructive here. No. 06-05-00237-CR, 2006 WL 932057, at *1 (Tex. App.—Texarkana Apr. 12,

---

[3]Although at the recusal hearing Knox's counsel indicated a desire to cross examine these witnesses, Knox chose not to call any live witnesses at the hearing:

> [THE COURT]: Does the movant have any additional evidence, other than what I have taken judicial notice of, which they desire for me to consider?

> [KNOX'S COUNSEL]: Your Honor, the movant stands on his motion and with the attached appellate record.

2006, no pet) (mem. op., not designated for publication). Gentry had been arrested after walking in and out of traffic. *Id.* The trial judge denied Gentry's motion to suppress the evidence that was obtained following the arresting officer's decision to stop and frisk Gentry. *Id.* At the conclusion of the motion to suppress hearing, the trial judge stopped the prosecutor during closing argument and stated he would deny the motion to suppress because he had personally witnessed Gentry's actions before Gentry was arrested:

> You can stop. Because *I'm going to be honest with you, I remember this day. I live on that road. This Motion is going to be denied because I'm one of them that almost hit them.* I'm going to deny this Motion to Suppress. I'm not so sure that I wasn't one of them who called Officer Dreesen to be honest with you. *I remember this day and I remember the situation.* I'm going to deny the Defendant's Motion today; it's not going to be granted.
>
> . . . .
>
> Like I say, *I've got firsthand knowledge of the situation* . . . and I believe he has the right to do this [search the defendant].
>
> . . . .
>
> To be honest with you, *my decision is based on what I saw that day*.

*Id.* (emphasis added). Thus, the court of appeals concluded that the trial judge based his ruling on personal knowledge rather than on evidence adduced at trial and in so doing committed an error requiring disqualification. *See id.* at *3; *see also Gaal v. State*, 332 S.W.3d 448, 543 (Tex. Crim. App. 2011) (identifying *Gentry* as "[a] clear instance of 'personal knowledge of disputed evidentiary facts' requiring recusal").

9

Judge Salvant's comments here are nothing like those in *Gentry*. Unlike the trial court judge in *Gentry*, Judge Salvant indicated his specific reasons for assessing punishment at forty years—none of which concerned Jeff's testimony and all of which were derived from the testimony and evidence presented at the sentencing hearing. Judge Salvant's comment that he knew Jeff from Jeff's time working with juveniles simply does not indicate that Judge Salvant possessed knowledge of *disputed evidentiary* facts that he attained outside of the judicial proceedings and on which he based his sentencing determination.[4]

Therefore, we hold that the recusal judge did not abuse his discretion because it is within the zone of reasonable disagreement to conclude based on the totality of the recusal-hearing evidence that Judge Salvant did not have personal knowledge of disputed evidentiary facts and that he is thus not a material witness. Accordingly, we overrule Knox's first and fourth points.

---

[4]We recognize that a family member's statement of opinion as to the punishment deserved by a defendant is generally outside the scope of testimony admissible as punishment-phase, victim-impact evidence. *See Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004). Knox's points on appeal challenge the denial of his motion to recuse, not any alleged admission of Jeff's opinion. In any event, because the record before us establishes that Judge Salvant's punishment determination was based on the evidence presented, admission of Jeff's opinion was not harmful. *See Poe v. State*, 630 S.W.2d 885, 890 (Tex. App.—Fort Worth 1982, pet. ref'd) (holding any error in admission of objectionable testimony at the punishment phase "was harmless in view of the evidence reflected in this record as a whole").

## B. Points Two and Three

In his second and third points of error, Knox argues that Judge Salvant should have been recused based on his on-the-record exchange with Jeff, because Judge Salvant's impartiality may be reasonably questioned and because Judge Salvant has a personal bias or prejudice concerning Knox or the subject matter of the sentencing hearing.

The bias or lack of impartiality of a trial judge may be a ground for judicial disqualification when it is of such a character as to deny the defendant due process. Tex. R. Civ. P. 18b(b)(1)–(2); *Gaal*, 332 S.W.3d at 453 (recognizing one subsection concerns bias and the other concerns impartiality but that there is "much overlap between these two subsections"); *Kemp v. State*, 846 S.W.2d at 305–06. A judge's remarks during trial "usually will not support a bias or partiality challenge, although they *may* do so if they reveal an opinion based on extrajudicial information, and they *will* require recusal if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Gaal*, 332 S.W.3d at 454 (internal quotation marks omitted).

Judge Salvant's comments "I'm only asking you this because I know you" and "you've spent a lot of time over there with the juveniles" may, at first blush, seem to indicate some bias or lack of impartiality. Indeed, the prosecutor agreed that "[a]t first, [the comments] concerned me[.]" However, as explained above, the evidence adduced at the recusal hearing demonstrated that Judge Salvant's knowledge of Jeff was limited to once-yearly, brief, professional exchanges

11

during tours conducted by Jeff of the Juvenile Services Facilities and that the two had no relationship outside of these interactions. And, the record from the sentencing hearing demonstrates that the trial court based the sentencing decision, not on Jeff's recommendation or any prior interaction with Jeff, but on the evidence and testimony adduced at the sentencing hearing.

Thus, we hold that the recusal judge did not abuse his discretion because when considering the totality of the evidence presented at the recusal hearing, it is within the zone of reasonable disagreement to conclude Judge Salvant's comments that "I'm only asking you this because I know you" and that "you've spent a lot of time over there with the juveniles" do not reveal a high degree of favoritism toward the victim and his family based on extrajudicial information so as to make a fair judgment impossible. *See id.* Accordingly, we overrule Knox's second and third issues.

## VI. CONCLUSION

Having held that the recusal judge did not abuse his discretion in denying Knox's motion to recuse, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, GABRIEL, and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 12, 2018

12